LYDIA E. SALISBURY, as Administratrix, etc., of JOHN S. SALISBURY, Deceased, Respondent, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

Fourth Department, May 4, 1927.

**Railroads — injuries to employees — action under Federal Employers' Liability Act to recover for death of plaintiff's intestate who was engaged as brakeman at time of accident — intestate was on brake step of next to last car just prior to accident and fell when train stopped — head brakeman who was at switch gave signal to stop just before or at time rear of train passed switch points — evidence does not establish plaintiff's claim of negligence in that head brakeman violated custom not to signal engineer to stop until he had received signal from intestate, and even if custom was not established that head brakeman signalled prematurely — stop was not emergency one and was not made suddenly and in violent manner — negligence not shown.**

This is an action under the Federal Employers' Liability Act to recover damages for the death of plaintiff's intestate, a brakeman, who was killed while his train was executing a switching movement. The intestate was the rear brakeman on the train. The head brakeman left the train for the purpose of turning the switch and as the rear of the train passed or was about to pass the switching points he signalled the engineer to stop the train. The intestate, who was standing on the brake step of the rear end of the next to the last car, fell when the train stopped, and suffered the injuries from which he died. The contention by the plaintiff that the head brakeman violated the custom in giving a signal to the engineer to stop before the rear brakeman, the intestate, had signalled the head brakeman, is not sustained by the evidence.

The evidence does not support the plaintiff's contention that even though no such custom existed, the act of the head brakeman in giving the signal was premature in that the signal was given before the rear car passed the switching points. The evidence shows that the rear car had passed the switching points or was so close to the switching points that the take-up of the train would bring the rear car beyond them. Furthermore, the stop as made was in the regular course of the work and should have been anticipated by the intestate. Even if the intestate did not anticipate that the train would stop at exactly the place where it did, negligence cannot be based upon any such unexpectedness unless the stop was sudden, violent or otherwise negligent. There is no evidence that this was an emergency stop or that it was made suddenly or violently.

APPEAL by the defendant, New York Central Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 25th day of October, 1926, upon the verdict of a jury for $20,000, and also from an order entered in said clerk's office on the 10th day of December, 1926, denying defendant's motion for a new trial made upon the minutes.

*Rann, Vaughan, Brown & Sturtevant* [*Raymond C. Vaughan* and *Noel S. Symons* of counsel], for the appellant.

*Ward, Flynn, Spring & Tillou* [*Hamilton Ward* of counsel], for the respondent.

TAYLOR, J. In an action brought under the Federal Employers' Liability Act (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143; now United States Code, tit. 45, §§ 51–59) plaintiff has recovered a verdict of $20,000 damages for the death of the intestate. Early in the morning of April 25, 1926, a string of eleven cars, which came from the south upon the second track from the east of four tracks running north and south, stopped south of Amherst street in the city of Buffalo, N. Y. A diagonal crossover, running southwesterly and northeasterly, connected the four tracks. About forty feet south of the center of Amherst street, near the easternmost track, was a " dwarf " semaphore, and twenty feet farther south were the switch points of the crossover. A switching movement was intended, viz., to run the train over upon the easternmost track, then north until the rear car cleared the switch points, then back some distance along the easternmost track.

Before reaching the switching points the conductor, Pike, the engineer, the head brakeman, Woodley, and decedent received their orders at the yardmaster's shanty to carry out this movement. The conductor, Pike, did not accompany the train during the movement, but stayed at the shanty. Decedent was upon the rear end of the train. Woodley, the head brakeman, instead of being on the top of the train in front, his usual position, rode on the footboard of the engine from Parish street to the center of Amherst street, where he stepped off and allowed the train to go on. Then, just after (or just before, this being a mooted question) the rear car cleared the switch points, Woodley gave a stop signal to the engineer. Woodley did not see the decedent immediately before he signaled, but from experience knew that Salisbury was either somewhere on the rear of the train or on the ground protecting the crossing. The last seen of decedent he was on the brake step on the rear end of the next to the last car. Just as the train came to a stop Woodley saw deceased fall between the last car and the one immediately in front of it. Decedent was injured and died within a short time.

Plaintiff's cause of action, as far as negligence is concerned, rests upon two claims: *First,* violation by defendant through Woodley, of a general custom and practice, whereby in such a movement the engineer should not stop the train nor the head brakeman signal for a stop until a signal had been received from the rear brakeman;

and *second,* that, even if there was no such custom, the defendant was negligent because Woodley signaled for the stop prematurely, that is, before the rear end of the train had passed the switch points. Some fourteen witnesses, including the other members of the crew of this particular train, testified for defendant that there was no uniform custom not to stop in such a movement until the rear brakeman had given a signal. For the plaintiff, three witnesses, Reynolds, Coleman and Hogan, testified on this subject.

The testimony of defendant's witnesses as to " uniform custom " was clear and straightforward; that of the plaintiff's witnesses was uncertain and contradictory. One of them, Coleman, testified that it was the custom and practice of the company for the man on the rear end of the train to signal for stops, and a violation of the custom to start pursuant to any other signal. Later he testified that if the rear man gave no signal and the man at Amherst street (Woodley) signaled, he would not be violating a rule of the company; and that there was no rule of the company, which he ever saw or heard of, that prohibited Woodley from giving just such a signal. Another of plaintiff's witnesses (Reynolds) testified that it would be a violation of a company rule for Woodley to give a stop signal before he got one from the man on the rear end of the train; and later he testified on cross-examination that the head end man might give the initial signal under such circumstances. Reynolds further said that he did not want the jury to understand that giving the signal the way Woodley did violated any custom or rule of the New York Central Railroad Company. Hogan, for plaintiff, testified that it would be " out of order with the custom " for Woodley to have given the signal under such circumstances. Then on cross-examination he testified that there are " many circumstances which would require a train to stop by signal from different people."

" The custom must be clearly proved; and where the evidence is uncertain and contradictory, the custom is not established." (17 C. J. 522.)

"A binding custom must be certain, definite, uniform, and known, or so notorious that it would have been known to any person of reasonable prudence who dealt with its subject with the exercise of ordinary care." (*Chicago, M. & St. P. R. Co.* v. *Lindeman,* 143 Fed. 946. See, also, *Walls* v. *Bailey,* 49 N. Y. 464; *Dickinson* v. *City of Poughkeepsie,* 75 id. 65; *Cassin* v. *Stillman, Delehanty-Ferris Co.,* 185 App. Div. 63.)

Under the authorities the testimony on this subject, taken all together, did not furnish warrant for a finding that a uniform custom or usage existed and was violated.

The court originally sent the case to the jury upon the theory

that negligence must be found, if at all, because of a violation of a uniform custom and practice in handling trains at this point.   Upon request, the charge was made in substance — rather as an academic rule of law, because the court said it " would be the law in a case in which the proofs were different "— that even if the jury found that there was no uniform custom or practice as claimed, if they found that the act of Woodley in giving the signal to stop the train when he did was an act of negligence and was the proximate cause of the accident, negligence could still be found.   This can only mean a finding that Woodley gave the signal prematurely.

Plaintiff has failed to satisfactorily establish that the signal to stop the train was given prematurely, assuming that there was no negligent violation of a uniform custom.

Woodley testified directly and repeatedly that the rear car had passed the " dwarf " before he gave the stop signal.   There is testimony of the conductor, Pike (who was sworn by plaintiff), and otherwise, that after the train stopped the south sidewalk was clear.   It is undisputed that the train was running only about three miles per hour when the signal was given, and that the engineer stopped the engine immediately upon receiving the signal.   It seems that thereupon some slack would immediately be taken up in the train, especially if the rear brakes were not applied.   The only testimony indicating that the signal might have been given shortly before the rear end of the last car passed the switch points was that of Woodley on cross-examination.   Upon a map in evidence (drawn to a scale of one inch to ten feet) Woodley marked a spot where he claimed decedent fell, and measurement showed that that spot was about twenty-nine feet from the " dwarf."   Decedent fell from the front end of the rear car, which was thirty-six feet long.   To find from all this testimony negligence in defendant because the signal was given by Woodley prematurely, and, therefore, unexpectedly to decedent, would be reaching a conclusion in opposition to the weight of the evidence.   Wherever decedent was, if his mind was upon his duty, he must (in the absence of a custom) have expected that a stop signal might be given when the rear of the train had passed or reached, or had almost reached, the switch points.   For the stop could not be made at once, certain slack had to be taken up, and the switch points would be cleared, even though the signal briefly preceded the complete clearing of the points.

It is undisputed that the train did not stop with any unusual jerk or abruptness.   Decedent assumed all obvious and necessary risks apparent to any prudent man in the usual conduct of the business in which he was engaged.   Even if decedent did not expect the stop at exactly the moment when it occurred, negligence could

not be based simply upon such unexpectedness, unless the stop was sudden, violent or otherwise negligent. (*Johnston* v. *Canadian Pac. R. Co.*, 50 Fed. 886.)

This was no emergency stop, but a stop often made in the ordinary course of business and one to be expected at about the time it occurred.

We are unable to affirm the judgment appealed from upon either theory claimed by plaintiff, to wit, violation of a uniform custom or practice in signaling and handling such a train at such a point, or the premature giving of the stop signal by Woodley. The questions of contributory negligence and assumption of risk were for the jury. But inasmuch as the finding of negligence was contrary to the weight of the evidence, we reverse the judgment appealed from upon the facts and grant a new trial, with costs to appellant to abide the event. Appellant claims that certain errors were committed by the trial justice; but in view of the disposition we make of this appeal, the claimed errors are not of sufficient importance to require discussion.

All concur. Present — HUBBS, P. J., CLARK, SEARS, CROUCH and TAYLOR, JJ.

Judgment and order reversed on the facts and a new trial granted, with costs to appellant to abide event.