LESTER H. STRYKER, ADMINISTRATOR AD PROSEQUEN-DUM OF THE ESTATE OF WINFIELD S. STRYKER, DE-CEASED, PLAINTIFF, v. PENNSYLVANIA RAILROAD COMPANY, BODY CORPORATE, DEFENDANT.

Submitted October 14, 1927—Decided February 14, 1928.

Before GUMMERE, CHIEF JUSTICE, and Justices BLACK and LLOYD.

For the plaintiff, *Quinn, Parsons & Doremus.*

For the defendant, *John S. Applegate & Son.*

The opinion of the court was delivered by

LLOYD, J. This is defendant's rule for new trial. We have before us the second verdict in favor of the plaintiff (the first having been set aside on rule to show cause), and, ordinarily, it would be sustained. The negligence of the deceased, for whose death the action was brought, however, so clearly appears from the uncontradicted evidence, that we feel constrained to make the present rule absolute also.

. The deecased, Winfield Stryker, stopped his automobile thirty feet from the west side of the railroad crossing at Stockton Lake road, Sea Girt, to permit a southbound train to pass, and when that train had proceeded a distance of two hundred feet he started across, first observing that no other train was within his vision. As he reached the far rails of the double track railroad he was struck by a northbound train traveling at a speed variously stated at from twenty to forty miles per hour. The northbound train was hidden from Stryker's view by the train going south, and under such circumstances it was clearly his duty to delay attempting to cross until the latter train had proceeded far enough to enable him to cross in safety. Stopping at thirty feet from the west track he was obliged to traverse approximately fifty feet in order to reach the point at which he was struck, and the train two hundred feet to reach the same point. Such conduct on the part of the deceased was literally to invite the disaster which unfortunately befell him.

An automobile, completely under the control of its operator, standing where placed, incapable of exercising a volition of its own, does not present to its driver the perplexities which courts have recognized in controlling a horse-drawn vehicle.

The witness Bennett, standing with his team of horses beside Stryker, started to cross, but observing the approaching train turned aside while the train passed. Had Stryker, too, even after starting, looked when looking was effective, disaster would not have overtaken him.

When a previous verdict in this case was before the court (4 *N. J. Mis. R.* 201; 132 *Atl. Rep.* 255), the opinion quoted from the Court of Errors and Appeals in the case of *Swanson* v. *Central Railroad*, 63 *N. J. L.* 605, as follows: "It is the duty of the traveler upon a highway before crossing a railroad to look up and down the tracks and also listen for approaching trains, and that his failure to do so is such negligence as will prevent a recovery if he is run down at the crossing, has been declared by this court in a long line of cases. So, too, it is entirely settled that if his ability to see or to hear an approaching train is temporarily diminished or destroyed by obstructions or disturbances which are transient in their nature, reasonable prudence required him to wait until such obstructions or disturbances have disappeared and his senses have again become efficient to warn him of danger before attempting the crossing."

Recently in a case where the view was permanently obscured by a building until one approached to within twelve feet of the track, Mr. Justice Holmes, speaking for the United States Supreme Court (*Baltimore and Ohio Railroad* v. *Goodman*, 48 *Sup. Ct. Rep.* 24), says: "When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. He knows that he must stop for the train, not the train stop for him. It seems to us that if he relies upon not hearing the train or any signal and takes no further precaution he does so at his own risk. If at the last moment Goodman found himself in an emergency it was his own fault that he did not reduce his speed earlier or come to a stop. * * * We are dealing with a standard of conduct, and when the standard is clear it should be laid down once for all by the courts."

In the present case the deceased knew that he was approaching a railroad track on which, with a prior right of way

granted by legislative authority, trains could pass at great speed; he knew that the crossing was one of extreme danger, and that collision meant, not only probable death to himself, but peril to the passengers and crew of the colliding train. He knew that a train approaching at ordinary speed would cover the space within his view in the time required for his own car to reach the northbound track. He could not, therefore, rest on the inadequate observation afforded when the obscuring train was but two hundred feet from the crossing, and either proceed blindly into the danger that confronted him, or, looking, proceed and take the chance of being killed. In such a situation the standard of duty is not doubtful; deceased should have so controlled his car in face of the train coming in plain view as to permit it to pass.

Plaintiff's counsel appeal to the act of 1910 (*Pamph. L., p.* 490), which commits to the jury the conduct of a traveler in approaching an unguarded crossing, in its bearing upon the negligence of the deceased. While this act precluded control of the case by the court at the trial through nonsuit or directed verdict the fundamental rule that contributory negligence defeats recovery remains, and if the jury disregard its plain duty in dealing with such negligence it rests upon the court as heretofore to exercise its prerogative to set aside a verdict so rendered in order that justice may be done.

The rule will be made absolute.