ELSYE RHINE v. DULUTH, MISSABE & IRON RANGE RAILWAY COMPANY.[1]

May 9, 1941.

No. 32,677.

[1]Reported in 297 N. W. 852.

282

*Austin & Wangensteen* and *I. R. Galob,* for appellant.

*Dennis F. Donovan, Clarence J. Hartley,* and *Elmer F. Blu,* for respondent.

GALLAGHER, CHIEF JUSTICE.

Plaintiff appeals from an order denying her motion for a new trial after a directed verdict for defendant.

On October 16, 1939, at about 3:45 a. m., an automobile in which plaintiff was riding collided with defendant's ore train at a crossing on state highway No. 169 about five miles north of Hibbing. The automobile, which was owned and driven by one Harold Jenson, was traveling south at the time of the collision. Plaintiff was riding in the front seat with Jenson. Two other lady passengers occupied the rear seat. All of the occupants of the car except Jenson were asleep at the time of the accident.

The crossing here involved is known as the "Godfrey Mine Crossing." Highway No. 169 is a much traveled paved highway running north and south. It is crossed by defendant's spur tracks, which serve the Godfrey and Alexandria mines. The tracks run in a northeasterly and southwesterly direction. The Great Northern Railway Company had used these tracks at times under a rental arrangement to haul ore from the Alexandria mine. The tracks at the crossing are almost level and a little lower than the surrounding ground. The highway slopes slightly toward the tracks, which are clearly visible to motorists for several hundred feet in either

direction from the crossing. A circular warning sign with large letters "R. R." is situated about 368 feet north of the crossing, and a black and white sawbuck sign with poles supporting it is located near the tracks on the west side of the highway.

The night was foggy. Jenson claims that he stopped the automobile about five miles north of the crossing and wiped the "fog and steam" from the windshield. He then proceeded toward Hibbing traveling at a rate of from 30 to 35 miles per hour. He could see about 40 feet in front of the car. Because the lights did not penetrate the fog, Jenson kept his eyes toward the right-hand edge of the pavement. He testified that the car was about 30 feet from the tracks when he observed the wheels of the train. He was unable to stop the automobile in time to avoid running into an ore car located near the rear of the train. Jenson testified that, traveling at the rate he was, he could have stopped and avoided the collision had he seen the train when he was 40 feet from it. His failure to see the train at 40 feet was due to the fact that he was looking toward the right side of the pavement.

The complaint charges defendant with negligence in two respects: (1) Failure to warn travelers of the presence of the train by ringing a bell or blowing a whistle as required by 2 Mason Minn. St. 1927, § 10263, and (2) failure to maintain proper warning signs at an extrahazardous crossing.

The first charge of negligence merits only passing reference. The automobile ran into an ore car located near the rear end of a moving train. The statute, 2 Mason Minn. St. 1927, § 10263, requiring that a bell be rung and a whistle blown, has no application to such a case. Statutory signals for trains approaching a highway crossing are solely for the benefit of travelers on the highway to warn them of approaching trains. They are immaterial where, as here, the train is actually upon and occupying the crossing when the traveler arrives. Crosby v. G. N. Ry. Co. 187 Minn. 263, 245 N. W. 31; Olson v. C. G. W. R. Co. 193 Minn. 533, 259 N. W. 70; Sullivan v. Boone, 205 Minn. 437, 286 N. W.

284

350; Krause v. C. St. P. M. & O. Ry. Co. 207 Minn. 175, 290 N. W. 294.

■ The crossing here involved is in open country. It is not so hazardous to the public as to require warnings in addition to those prescribed by the railroad and warehouse commission. It was not shown that the usual fog conditions were of such a character as to justify a finding that ordinary care required the installation of fog warnings. Licha v. N. P. Ry. Co. 201 Minn. 427, 276 N. W. 813; Munkel v. C. M. St. P. & P. R. Co. 202 Minn. 264, 278 N. W. 41. As emphasized in Massmann v. G. N. Ry. Co. 204 Minn. 170, 282 N. W. 815, and Sullivan v. Boone, 205 Minn. 437, 286 N. W. 350, the decision in the Licha case, here relied upon by plaintiff, only applies the rule of commensurate care to a railroad crossing. Unless conditions at a crossing create hazards to the public that justify a finding that the warnings of the existence of the crossing required by the commission do not constitute ordinary care, no further warning is required other than that prescribed by the commission. L. 1925, c. 336, 1 Mason Minn. St. 1927, §§ 4743-1 to 4743-17. The rule is one of ordinary care. The commission's requirements must be met, but if ordinary care requires more that requirement must also be met. In this case the signs required by the commission were installed at this crossing.

The decision of the United States Circuit Court of Appeals for the district of Minnesota filed April 14, 1941, in the case of Duluth, Winnipeg & Pacific Ry. Co. v. Zuck (8 Cir.) 119 F. (2d) 74, also relied upon by plaintiff, is distinguishable. There plaintiff offered evidence to show frequent fogs at the crossing in question. In the present case there was no such showing, the testimony being confined to the foggy conditions existing at the crossing and at some places in the vicinity thereof on the night of the accident.

■ In the case at bar the plaintiff sought to establish a custom for trains operated across this crossing to put out flares as a warning that the crossing was being used by the train. The plaintiff called as her own witness the trainmaster for the Great Northern railway, which at the time also used this crossing under a joint

operating agreement. He testified that his railroad did not require or contemplate the use of flares for a through or straightaway movement across this crossing and that when there was a switching movement involving doubling back and forth over the crossing they left it to the discretion of the conductor on the job as to whether or not fuses should be used. He also testified that this train was being operated in a straightaway movement and not in a switching movement. No evidence at all was shown of the custom or requirements of the defendant railroad, and the plaintiff relied wholly upon witnesses who had used this highway crossing and had on occasions seen flares in use there. One of them who was quite familiar with the crossing had seen flares half a dozen times. Another had seen them three times; some had seen them several times. Upon such a showing the evidence fell far short of establishing a custom.

The essential elements of a custom are stated in C. M. & St. P. Ry. Co. v. Lindeman (8 Cir.) 143 F. 946, 949, thus:

"A custom has the force of law, and furnishes a standard for the measurement of many of the rights and acts of men. It must be certain or the measurements by this standard will be unequal and unjust. It must be uniform; for, if it vary, it furnishes no rule by which to mete. It must be known, or must be so uniform and notorious that no person of ordinary intelligence who has to do with the subject to which it relates and who exercises reasonable care would be ignorant of it; for no man may be justly condemned for the violation of a law or a custom which he neither knows nor ought to know. In short, a binding custom must be certain, definite, uniform, and known, or so notorious that it would have been known to any person of reasonable prudence who dealt with its subject with the exercise of ordinary care."

These were the tests of custom applied in Salisbury v. New York Cent. R. Co. 220 App. Div. 491, 222 N. Y. S. 38; Matarani v. Reading Co. 119 N. J. L. 43, 194 A. 246. A custom must be clearly

proved, and where evidence is uncertain and contrary the custom is not established. 17 C. J. p. 522.

It is contrary to common sense that a straightaway or through train movement should be stopped to put out flares on both sides of the railroad crossing. It is obvious that a train's progress over such crossings would be so hampered as to be an impractical method of operating a railroad. Such being the case, proof of a custom cannot rest on such testimony as was here presented. The trial court was right in its rulings that no such custom was established.

The order appealed from is affirmed.

