# CHARLES BLASKE v. NORTHERN PACIFIC RAILWAY COMPANY AND ANOTHER.[1]

May 20, 1949.

Nos. 34,715, 34,716.

---

[1]Reported in 37 N. W. (2d) 758.

*L. B. daPonte, Conrad Olson, Earl F. Requa,* and *Atwood & Quinlivan,* for appellant.

*Walter F. Rogosheske* and *Lawrence M. Hall,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Actions by Charles Blaske, special administrator of the estates of Olga Blaske and Beatrice Blaske, deceased, for their wrongful

deaths as the result of a collision between an automobile in which they were passengers and defendant railway company's passenger train, operated by its employe, defendant Clarence Green, at a crossing at Sartell, Minnesota, about 8 p. m., November 3, 1946. Defendant denied negligence and alleged that the accident was caused by the negligence of the driver, of the automobile and the contributory negligence of decedents.

The jury returned verdicts of $7,500 for plaintiff against the railway company in each case, and at the same time returned verdicts exonerating the engineer, defendant Green. The jury also answered in the affirmative a special interrogatory submitted to it as to whether the railway company was negligent in not having a flagman at the crossing at the time in question. From an order in each case denying its alternative motion for judgment or a new trial, the railway company, hereinafter referred to as defendant, appeals.

The crossing in question is commonly known as the Sartell crossing. The tracks there extend in a north-south direction. Sartell street extends east and west and passes over them just west of U. S. highway No. 10, which is east of and parallel to the railroad tracks. West of the crossing Sartell street extends into a residential district of Sartell. The tracks at the crossing consist of two main tracks for northbound and southbound traffic and two auxiliary tracks, one designated a "passing track," and the other a "storage track." The latter two are east of the two main tracks. Some distance north of the crossing there is another passing track, together with the Sartell depot, coal docks, and water tank.

The crossing is marked by ordinary railway "sawbuck" signs to the east and west of the tracks. Some 11.3 feet east of the crossing on Sartell street there is an additional sign, to which is affixed a red light and bell, actuated by electricity, so that when a train is within a certain distance of the crossing travelers are warned by sounding of the bell and lighting of the red light. The light is about four inches in diameter and some 12.5 feet above the level of the highway. There is no dispute that the signals provided fully com-

plied with the statutory requirements and orders and regulations of the railroad and warehouse commission.

Shortly prior to the accident, the automobile in which plaintiff's decedents were riding approached the crossing from the east. It was operated by a son of plaintiff, and another son and one Viola Poganski were also passengers therein. Finding the crossing blocked by a passing freight train about three-quarters of a mile in length moving north on the easterly main track, the automobile was brought to a stop just east of the tracks to await its passage. The red light and bell above described were both operating at the time. Another freight train headed south was stopped on another passing track located somewhat north of the crossing and west of the four tracks above described. Its headlight remained shining on the crossing as it awaited passage of a southbound passenger train so that it might continue south thereafter.

The southbound passenger train approached the crossing just as the northbound freight, for which the car of plaintiff's decedents had stopped, had cleared the crossing. Immediately after the northbound freight had passed, the driver of the car drove it forward to cross the tracks, notwithstanding the fact that the signal light was still on and the bell still sounding. As he reached the third, or southbound main track, his car was struck by the southbound passenger train, and all five occupants thereof were killed. It is undisputed that the passenger train was then traveling at its usual speed of about 60 miles per hour, and that the engineer sounded his whistle continuously, with only momentary interruptions, from a point about one quarter of a mile north of the crossing. Decedents' automobile was carried some 500 to 600 feet to the south, while the passenger train was brought to a stop with its locomotive some 1,200 feet south of the crossing.

On appeal, defendant contends that (1) the accident was caused solely by the negligence of the driver of the automobile; (2) the court erred (a) in submitting the question of defendant's negligence in operating its train at an excessive speed over the crossing, (b) in submitting the question of defendant's negligence in failing to

provide adequate signals at the crossing, (c) in the admission and exclusion of certain evidence and in certain instructions to the jury as hereinafter outlined; (3) the verdicts were perverse, and, in the Beatrice Blaske case, excessive; and (4) plaintiff's counsel was guilty of misconduct in his closing argument.

■ There can be no question that the driver of decedents' automobile was negligent as a matter of law, and that such negligence was the proximate cause of the accident. Undisputed evidence establishes that he proceeded across the tracks in the face of the warning light and the sounding bell. A minimum of observation on his part would have readily indicated the approach of the southbound passenger train. It is held, almost universally, that a traveler who crosses tracks after a train has passed and is struck by another traveling in the opposite direction is negligent as a matter of law. See, Marty v. C. St. P. M. & O. Ry. Co. 38 Minn. 108, 35 N. W. 670; 3 Elliott, Railroads (3 ed.) § 1686; Southern P. Co. v. Day (9 Cir.) 38 F. (2d) 958; Applegate v. C. & N. W. Ry. Co. 334 Ill. App. 141, 78 N. E. (2d) 793; Brown v. St. Louis San Francisco Ry. Co. 121 Kan. 32, 245 P. 1034; Henderson v. St. Louis-San Francisco Ry. Co. 314 Mo. 414, 284 S. W. 788; Rau v. N. P. Ry. Co. 87 Mont. 521, 289 P. 580; Stryker v. Pennsylvania R. Co. 104 N. J. L. 299, 140 A. 451; Rives v. Atlantic Coast Line R. Co. 203 N. C. 227, 165 S. E. 709; Pennsylvania R. Co. v. Rusynik, 117 Ohio St. 530, 159 N. E. 826, 56 A. L. R. 538; Haller v. Pennsylvania R. Co. 306 Pa. 98, 159 A. 10; Frank v. McCarthy, 112 Utah —, 188 P. (2d) 737.

■ Notwithstanding this, of course, before defendant may escape liability insofar as decedents are concerned, the evidence must establish either that their contributory negligence was a proximate cause of the accident, or that defendant was entirely free from negligence proximately causing the same.

There is no difficulty on the question of contributory negligence. The court submitted this issue to the jury, and, in the absence of any evidence to indicate such negligence, its finding thereon properly absolved decedents from any causal connection with the accident.

■ Accordingly, there is left for decision here only the determination of the correctness of the trial court's submission of the issues of defendant's negligence. These were: Whether defendant operated its train at an excessive rate of speed over the crossing; or whether defendant failed to provide adequate warnings, by signals or watchman, at the crossing. Under well-established principles, this in turn depends upon whether the crossing in question was an extrahazardous one or otherwise.

Where conditions surrounding and in proximity to a crossing make it more hazardous than an ordinary crossing, it may be negligence for a train to travel over the same at its usual rate of speed. Bryant v. N. P. Ry. Co. 221 Minn. 577, 23 N. W. (2d) 174; Molden v. M. St. P. & S. Ste. M. Ry. Co. 160 Minn. 471, 200 N. W. 740; Lawler v. M. St. P. & S. Ste. M. Ry. Co. 129 Minn. 506, 152 N. W. 882. Under normal circumstances, however, and over ordinary crossings, we have held that a speed of 60 miles per hour, the speed of the passenger train here, does not constitute negligence. Ohrmann v. C. & N. W. Ry. Co. 223 Minn. 580, 27 N. W. (2d) 806; cf. Engberg v. G. N. Ry. Co. 207 Minn. 194, 290 N. W. 579, 154 A. L. R. 206; Hoyum v. Duluth, W. & P. Ry. Co. 203 Minn. 35, 279 N. W. 729; see, Bryant v. N. P. Ry. Co. *supra;* 3 Blashfield, Cyc. of Auto. Law and Practice (Perm. ed.) § 1709.

■ Likewise, it is only where a crossing is extrahazardous that the burden may fall upon the railroad to provide signals or protection therefor beyond statutory requirements or the railroad and warehouse commission's orders and regulations, which were complied with here. Koop v. G. N. Ry. Co. 224 Minn. 286, 28 N. W. (2d) 687; Rhine v. D. M. & I. R. Ry. Co. 210 Minn. 281, 297 N. W. 852; Engberg v. G. N. Ry. Co. 207 Minn. 194, 290 N. W. 579, 154 A. L. R. 206; Sullivan v. Boone, 205 Minn. 437, 286 N. W. 350; Licha v. N. P. Ry. Co. 201 Minn. 427, 276 N. W. 813; Crosby v. G. N. Ry. Co. 187 Minn. 263, 245 N. W. 31; Hollister v. Hines, 150 Minn. 185, 184 N. W. 856; Massmann v. G. N. Ry. Co. 204 Minn. 170, 282 N. W. 815.

■ In other words, unless it appears that special facts or circumstances exist with reference to a crossing which require that, in the exercise of reasonable care, a train reduce its customary speed while passing over the same, or that warnings in addition to those prescribed by statute or regulation be provided, there is nothing for the jury insofar as either of such issues is concerned. Where such facts or circumstances do appear or where reasonable minds may differ as to their presence, the issue of negligence insofar as speed or warnings are concerned becomes one of fact for the jury.

This rule is well established in Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 421, 12 S. Ct. 679, 684, 36 L. ed. 485, 490, as follows:

"* * * it must be first shown that such crossing is more than ordinarily hazardous: as, for instance, that it is in a thickly populated portion of a town or city; or, that the view of the track is obstructed either by the company itself or by other objects proper in themselves; or, that the crossing is a much travelled one and the noise of approaching trains is rendered indistinct and the ordinary signals difficult to be heard by reason of bustle and confusion incident to railway or other business; or, by reason of some such like cause: * * *."

■ An examination of the record here discloses no facts or circumstances in existence at the time of the accident which might reasonably support a finding of negligence in the speed at which the passenger train traversed said crossing, or in the failure of defendant to provide signals in addition to those prescribed by statute or regulation.

The crossing is at the same level as the highway. It is located in a sparsely settled region outside the village of Sartell. Sartell has a population of approximately 600 people. The view of the tracks at the crossing is unobstructed. No trees or underbrush obscure it. The nearest building, the depot, is some 200 feet north thereof. Most of the switching operations are carried on some distance to the north of the crossing.

About 500 vehicles pass over it each day, a large proportion of them cars owned by employes of a paper mill, who are thoroughly familiar with it. Traffic is concentrated at the beginning and the end of the employment shifts at the mill. The accident did not happen at either of these times.

About 30 trains pass over the crossing each day. On occasion, two trains traveling in opposite directions may meet thereon, as happened in the instant case. The mere fact that two trains traveling in opposite directions might on occasion meet at a crossing would not in itself constitute it an extrahazardous one. Were it to be held otherwise, there is scarcely a crossing in the state which would not fall under the designation "extrahazardous."

The statutory signals provided were located on both sides of the crossing. The red light and bell signal were directly east of the track and in the line of vision of a motorist passing over the tracks from the east. These signals amply warned other motorists awaiting passage over this crossing at the time. The record discloses that from their testimony they heard the whistle of the approaching southbound passenger train and saw its headlight. There is no evidence that the noise or presence of the passing freight prevented casual observers from noting its approach. That the driver of decedent's car chose to ignore the warning signals and proceed blindly ahead without exercising even ordinary care under the circumstances would not tend to establish that the crossing was extrahazardous. We conclude that there is nothing in the record which would support a determination that defendant should have slackened the customary speed of its train while passing over the crossing or provided warning signals in addition to those prescribed by statute or regulation. See, Bryant v. N. P. Ry. Co. 221 Minn. 577, 588, 23 N. W. (2d) 174, 181; cf. Ohrmann v. C. & N. W. Ry. Co. 223 Minn. 580, 27 N. W. (2d) 806; Engberg v. G. N. Ry. Co. 207 Minn. 194, 290 N. W. 579; Perkins v. C. M. & St. P. Ry. Co. 158 Minn. 184, 197 N. W. 758; Hume v. D. & I. R. R. Co. 149 Minn. 245, 183 N. W. 288.

It follows that the trial court erred in submitting to the jury the issue of defendant's negligence in the speed of its train over this crossing or in its failure to provide additional warning therefor either by signals or by watchman. We cannot escape the conclusion that the fatal accident was caused solely by the negligence of the automobile driver.

The determination of the appeal on this basis makes it unnecessary to discuss the further errors assigned by defendant.

The order denying defendant's motion for judgment notwithstanding the verdict is reversed, and the court is directed to enter judgment for defendant railway company.

So ordered.

---

[1]Reported in 37 N. W. (2d) 737.