# HERBERT LEISY v. NORTHERN PACIFIC RAILWAY COMPANY AND ANOTHER. LELANIE LEISY v. SAME.[1]

January 13, 1950.

No. 34,946.

*Fred J. Hughes,* for appellants.

*M. L. Countryman, Jr.,* and *Earl F. Requa,* for respondents.

[1]Reported in 40 N. W. (2d) 626.

PETERSON, JUSTICE.

Two actions, one by Herbert Leisy, the owner and operator of an automobile, to recover for personal injuries and property damage alleged to be the consequence of a collision with one of defendant railroad company's trains negligently caused by defendants, and the other by Lelanie Leisy, a minor, by her father as natural guardian, to recover for personal injuries sustained by her as a consequence of the collision while she was a passenger in the automobile operated by her father, Herbert Leisy.

The question for decision is:

Whether, in determining whether a railroad was negligent in a case involving a collision between a train and an automobile at a crossing, located in a sparsely settled woods and lake region, over a town road, which ascended 12 feet in a distance of 100 feet before it crossed the tracks and then descended on the other side, on which road there was very little traffic and from which the operator of a motor vehicle had a clear view of the crossing itself when 400 feet therefrom and of approaching trains on the tracks for 600 feet to 700 feet when 50 feet therefrom and for 900 feet when 25 feet therefrom, the trier of fact may consider not only such factors as compliance with statutory requirements as to installing warning signs and the sounding of the bell and whistle on the locomotive, but also those of the railroad's omission to take other precautions for the safety of travelers upon the highway such as the maintenance of a flagman, gates, automatic signaling devices, and the like.

We shall state the facts from which this question emerges as they appear ultimately from the evidence, and in so doing we shall state distances not as witnesses sometimes estimated them, but as they indisputably appear according to actual measurement. For example, the engineer of the train characterized the crossing as a "particularly blind" and "pretty dangerous" one, but which he explained meant that the crossing was "dangerous if you don't look out for it." That does not differ in substance from the characterization of crossings not particularly blind or dangerous by

this court in Ohrmann v. C. & N. W. Ry. Co. 223 Minn. 580, 27 N. W. (2d) 806, and the court of appeals in Roth v. Swanson (8 Cir.) 145 F. (2d) 262.

The collision occurred at about five o'clock in the afternoon of February 13, 1948. Defendant's tracks extend generally from north to south, and the town road on which plaintiff Herbert Leisy was driving extends from east to west. They intersect at right angles. Beginning at a point about 100 feet east of the tracks, the road ascends 12 feet to the tracks and then drops down on the other side. Driving up the ascent and down the descent was referred to as going over a "camel's hump." There was considerable snow on the ground, which had been removed from the traveled portion of the road and cast along the sides thereof so as to form banks about three or four feet high. At a distance at least 400 feet back from the tracks, the cross-buck signs on both sides of the tracks were not only plainly visible, but dominated the landscape. The tracks were visible, as one approached them from the east, for about 600 feet to 800 feet north of the crossing at a point about 400 feet east thereof, and then were not visible at all until a point 50 feet east of the tracks was reached, where they were visible for about 600 to 700 feet to the north. At a point 25 feet east of the tracks, they were visible for at least 900 feet to the north.

The region is one of woods and lakes and sparsely settled. Only three families lived the year round west of the tracks. The only travel on the road was that by the members of these families and others making occasional trips to work at lake cottages, but the extent thereof, which admittedly was little, was not shown.

Plaintiff Herbert Leisy was driving his automobile west on the town road. His wife, Evelyn, and their five-year-old daughter, Lelanie, who sat between them, were in the front seat with him. Herbert Leisy and his wife testified that they did not hear any train whistle or bell; that, when they reached a point about 50 feet east of the tracks, they had what he called a "substantial view to the right," but that they did not see the train then approaching from that direction; that they were then going about 20 to

25 miles per hour; that they first saw the train when they were about 50 feet from the tracks and the train was then about 80 feet north of the road; that Herbert then applied his brakes, with the result that instead of stopping his car it skidded forward to the east rail, where it came to a stop; that the front wheels got caught in an icy groove along the rail about six inches deep; that then for the first time the train's whistle was blown; that Herbert tried to extricate his car from the groove; that he killed his engine; and that before he could do anything more the train hit his automobile and threw it into a ditch, thereby causing personal injuries to Herbert and Lelanie and damaging the automobile. There was a curve in the tracks a little over 1,000 feet to the north of the crossing. The quarter-mile whistle post was a little over 1,400 feet north of the road.

It is undisputed that defendant erected on either side of the tracks cross-buck signs plainly visible for at least 400 feet. While there is a conflict in the evidence as to whether the whistle was blown and the bell rung until just before the collision, there was testimony to sustain a finding that the whistle was blown and the bell rung just before reaching the whistle post, and that they were kept blowing and ringing until after the train had passed over the crossing. The testimony was contradictory as to the existence of the icy groove along the east rail in which Herbert claimed that the front wheels of his car became caught.

The trial judge submitted to the jury the questions whether defendant was negligent in failing to comply with the requirements of the statute (M. S. A. 616.34) as to blowing the whistle and ringing the bell and whether it negligently permitted the groove to form; but refused to instruct the jury that, in passing upon the first-mentioned question, it might consider also the failure or omission of defendant to have a flagman at the crossing or to maintain there gates, automatic signaling devices, and the like, for the protection of persons approaching the tracks on the road.

On the appeal, the only question raised is whether the refusal so to instruct was error. The verdict was for defendant.

A railroad company is required to exercise due care to avoid accidents at crossings. Due care is the requirement under all circumstances. As we have held time and again, due care is such care as is commensurate with the danger of the situation and is measured by the exigencies thereof as they were, or should have been, known to the actor. Despatch Oven Co. v. Rauenhorst, 229 Minn. 436, 40 N. W. (2d) 73. Requirements prescribed by statute, or by administrative order under statutory authorization, are specific and minimum requirements, which may satisfy the requirements of due care, but not necessarily so; and where they do not, the actor must take such additional precautions as due care may require. It is well settled that the rule applies to railroad companies with respect to the care required of them to avoid crossing accidents. Massmann v. G. N. Ry. Co. 204 Minn. 170, 282 N. W. 815; Licha v. N. P. Ry. Co. 201 Minn. 427, 276 N. W. 813; 5 Dunnell, Dig. & Supp. § 8174, and our cases there collected.

In railroad crossing cases, there is no hard and fast rule for determining whether the statutory *minima* satisfy the requirements of due care and whether additional precautions are required. Each case should be determined with reference to its own facts and circumstances. Where the evidence permits conflicting inferences of fact as to whether or not reasonable care required that precautions in addition to the statutory *minima* should have been taken by the railroad to satisfy the requirements of due care, the question is one of fact for the jury; but, where the evidence permits only the inference that such additional precautions were not necessary in the exercise of due care, the question is one of law for the court, and in such a case the question should not be submitted to the jury. Rhine v. D. M. & I., R. Ry. Co. 210 Minn. 281, 297 N. W. 852; Lawson v. M. St. P. & S. S. M. Ry. Co. 174 Minn. 404, 219 N. W. 554; Engel v. Minneapolis St. Ry. Co. 149 Minn. 356, 183 N. W. 842; Hume v. D. & I. R. R. Co. 149 Minn. 245, 183 N. W. 288.

As applied here, the statutory requirements—the *minima* under the rule—were satisfied by defendant. It is undisputed that it

installed and maintained cross-buck signs on both sides of the tracks. There is a finding implicit in the verdict, which is unchallenged here, that the whistle was blown and the bell was rung as required by statute. It remains to be determined, therefore, whether other and additional precautions were required at the crossing of defendant. The answer to that question depends upon whether the statutory requirements failed to satisfy those of due care under the circumstances. See, 3 Shearman and Redfield, Negligence (Rev. ed.) § 454.

Due care did not require that defendant exercise any precautions at the crossing in addition to those prescribed by statute. In the country, where but a few persons pass over the tracks each day and where there are no interferences with hearing and sight, compliance with statutory requirements suffices. Hume v. D. & I. R. R. Co. *supra;* Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 12 S. Ct. 679, 36 L. ed. 485 (cited in Blaske v. N. P. Ry. Co. 228 Minn. 444, 37 N. W. [2d] 758); 2 Thompson, Negligence, § 1527. See, Lawson v. M. St. P. & S. S. M. Ry. Co. *supra.* Extra or additional care must be exercised at what are called "extrahazardous" or "peculiarly" and "unusually" dangerous crossings. Massmann v. G. N. Ry. Co.; Lawson v. M. St. P. & S. S. M. Ry. Co.; Engel v. Minneapolis St. Ry. Co.; Hume v. D. & I. R. R. Co., all *supra.* Here, the evidence not only did not permit an inference of fact that the crossing was extrahazardous or peculiarly and unusually dangerous so as to require that precautions additional to the statutory *minima* be exercised, but, on the contrary, compelled as a matter of law decision that the crossing was not such.

Affirmed.