231 Minn. 121 (1950)
OLGA JORGENSON
v.
MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.
HENRY JORGENSON
v.
SAME.[1]
Nos. 35,079, 35,080.
Supreme Court of Minnesota.
May 5, 1950.
*122 James L. Hetland, Ross L. Thorfinnson, and Henry N. Jenson, for appellant.
C.U. Landrum, for respondents.
KNUTSON, JUSTICE.
The two cases above were consolidated for trial and likewise have been consolidated here. The appeals are from orders denying motions for judgment notwithstanding the verdicts or for a new trial after a verdict for plaintiff in each case.
The actions arose out of a collision between one of defendant's freight trains and an automobile owned and driven by plaintiff *123 Henry Jorgenson, in which his wife, plaintiff Olga Jorgenson, was riding. The collision occurred on May 7, 1948, at about 9:05 a.m. on a clear day. Defendant's track at the place of the collision runs approximately north and south. The county road on which plaintiffs were driving runs substantially parallel with the railroad until it reaches a point about 83 feet from the crossing, at which place it turns to the east and makes a substantially right-angled crossing. This crossing is located about four miles south of Detroit Lakes and is referred to in the record as the Schroeder crossing. The road approaches the track at a slight incline, the grade being about eight percent, or the rise for the last 27 feet before the track is reached being about two feet. The track is elevated so that it is above the level of the roadway. At a point 135 feet from the crossing, the track is 7.8 feet above the level of the road; at 83 feet it is 5.8 feet above the road; at 27 feet from the crossing it is 2 feet above the road; and from that point the road rises so that at the crossing both are on the same level. The crossing is protected by the customary cross-buck sign and the usual highway "stop" sign attached to the cross-buck pole.
The train consisted of a diesel locomotive, 51 freight cars of various kinds, including boxcars, and a caboose. The train approached the crossing from the north at 29 miles per hour. Plaintiffs approached the crossing from the south and when about 30 or 40 feet from the crossing, according to their own testimony, came to a complete stop. The testimony of both Henry Jorgenson and his wife is that they then looked both ways, saw no train approaching, so proceeded to cross the track at about 10 to 15 miles per hour. When the front end of the automobile was barely on the track, they were struck by the train. Both claim that they saw no train until it was right on them. Both claim that they heard no whistle or other noise from the train. Defendant's train crew, consisting of engineer, fireman, and head brakeman, all riding in the engine, testified that the whistle was blown for a quarter of a mile from the crossing until the emergency brake was applied when they saw the car on the track. The engineer admits that he saw the automobile *124 approaching the track, but assumed that it was going to stop, and that he applied the emergency brake as soon as he realized that the car was going to be on the track. The train traveled about 800 feet after the emergency application of the brake. Six disinterested witnesses, in addition to the train crew, living or working on farms in close proximity to the crossing, all testified that the whistle was blown for a considerable period of time before the collision.
Defendant contends that the evidence does not sustain a finding of negligence and that the evidence establishes the contributory negligence of plaintiffs as a matter of law.
One of the issues submitted by the court to the jury was whether the crossing was "extra hazardous" and, if so, whether the signs maintained at the crossing were sufficient, without any explanation as to what would constitute ordinary, hazardous, or extrahazardous crossings, or what type of warning would be sufficient to discharge the duty of a defendant in exercising ordinary care if it found one type of crossing or the other to exist.
1. In Massmann v. G.N. Ry. Co. 204 Minn. 170, 282 N.W. 815, we discussed the applicable rules pertaining to the exercise of ordinary care by a railway company in connection with the establishment and maintenance of warning signs at crossings of this kind. We there pointed out that the question of adequacy of such signs involved the exercise of ordinary care under the circumstances existing in the particular case.
Warning signs are required primarily for one or two purposes, or a combination of both. The first of these is to warn a traveler on the highway of the presence of the track. In the instant case, plaintiffs not only admitted that they were familiar with the track and the crossing, but further admitted that they saw the signs warning of the presence of the track and came to a complete stop in response thereto. Under these circumstances, nothing further was required to advise plaintiffs of the presence of the track, and it was not proper to permit the jury to further consider this phase of the question.
*125 "* * * where the evidence permits only the inference that such additional precautions were not necessary in the exercise of due care, the question is one of law for the court, and in such a case the question should not be submitted to the jury." Leisy v. N.P. Ry. Co. 230 Minn. 61, 65, 40 N.W. (2d) 626, 629.
2. The second purpose for which warning signs or signals are sometimes required is to warn travelers on the highway of the approach of trains on the track. Here, also, we have a question involving the exercise of ordinary care under the circumstances and in the light of the facts pertaining to the particular crossing involved. In this case, the accident happened in broad daylight. Plaintiffs had come to a stop in response to a sign warning them of the existence of the track. From the position in which they found themselves they could easily have seen an approaching train as far back as it could possibly have been when they started to cross the track. Under these circumstances, it must be held as a matter of law that defendant was not negligent in not providing more than the statutory warning signs. The crossing is quite similar to that in the Leisy case, where we held as a matter of law that the statutory minima was sufficient to discharge the duty of exercising ordinary care at a country crossing of this type.
3. The court also submitted to the jury the question of the speed of defendant's train as a possible element of negligence. The train was concededly traveling 29 miles per hour in approaching a country crossing. Under the facts and circumstances of this case, such speed, as a matter of law, was not negligent. Blaske v. N.P. Ry. Co. 228 Minn. 444, 37 N.W. (2d) 758.
Another element of negligence submitted by the court to the jury was the failure to keep a proper lookout. Practically the only evidence relied upon to establish this phase of the case was the fact that the engineer of defendant's train sounded two short "toots" at some "farmer boy friends" when the train was some quarter of a mile away from the crossing. There is no evidence that he paid any more attention to the farm boys after passing that location. To the contrary, the evidence is almost conclusive that he immediately *126 thereafter began sounding the horn for the crossing and continued to do so until he grabbed the emergency brake handle after realizing that a collision was imminent.
4-5. The only possible theory of negligence on the part of defendant which has any substance at all is the testimony of plaintiffs that they failed to hear any whistle or bell. All members of the train crew claim that the whistle was sounded. Six disinterested witnesses in places where they had ample opportunity to hear testified that the horn was sounded for a considerable time before the collision occurred. The only opposing evidence is that of plaintiffs that they did not hear any whistle or bell. It is doubtful that such negative testimony alone can be permitted to prevail against all the testimony of those who were in a position to know whether the whistle was blown or not. Franklin v. M. St. P. & S.S.M. Ry. Co. 179 Minn. 480, 229 N.W. 797; Hollister v. Hines, 150 Minn. 185, 184 N.W. 856; Lawson v. M. St. P. & S.S.M. Ry. Co. 174 Minn. 404, 219 N.W. 554.
Plaintiffs argue that, this being a diesel engine, which does not make as much noise or give as much warning of its approach as a steam locomotive, some additional precautions must be taken upon approaching a crossing. Apparently, they seek to impose upon operators of diesel engines a greater degree of care than is required of operators of steam locomotives on account of the difference in the amount of noise made by the whistle or horn. The law imposes no such additional responsibility, and we do not believe that there is any occasion for our doing so.
Irrespective of any question of negligence, the evidence of plaintiffs' contributory negligence is conclusive, and the case in this respect is controlled by our recent decision in Dahlquist v. M. & St. L. Ry. Co. 230 Minn. 203, 41 N.W. (2d) 587. From the point where plaintiffs came to a stop, there were no obstructions which would prevent them from seeing the approaching train, had they looked. If they did not see the train, it must have been either because they did not look or because they did not see what obviously was there. *127 The opportunity for observation was much greater here than it was in the Dahlquist case.
Olga Jorgenson also is guilty of contributory negligence as a matter of law, without reference to the question of imputed negligence of the driver. By her own testimony, she undertook to make the necessary observation and to inform the driver that the "track is clear and you can go." By so doing, she affirmatively assumed the responsibility of knowing that whereof she spoke. Waters v. C.M. & St. P. Ry. Co. 189 Iowa 1097, 178 N.W. 534; Franklin v. M. St. P. & S.S.M. Ry. Co. 179 Minn. 480, 229 N.W. 797, supra.
Defendant was entitled to a directed verdict, both on the question of negligence and contributory negligence.
Reversed with instructions to enter judgment for defendant in each case.
NOTES
[1] Reported in 42 N.W. (2d) 540.