## CORELLA HAUKOM v. CHICAGO GREAT WESTERN RAILWAY COMPANY AND ANOTHER.

132 N. W. (2d) 271.

December 18, 1964—No. 39,263.

544

*Stearns, Kampmeyer & Efron* and *Harry S. Stearns, Jr.,* for appellant.

*O'Brien, Ehrick & Wolf, R. V. Ehrick,* and *Ted E. Deaner,* for plaintiff respondent.

THOMAS GALLAGHER, JUSTICE.

This is an action by Corella Haukom against Chicago Great Western Railway Company, a corporation, referred to herein as Great Western, and Olmsted County Bank & Trust Company, as special administrator of the estate of Benonie D. Haukom, deceased husband of plaintiff, for injuries sustained by her when an automobile in which she was a passenger, and which belonged to and was being driven by her husband, was struck by defendant railroad's train on Minnesota Trunk Highway No. 56 in Dodge County. On special interrogatories the jury found that Great Western and the decedent were both guilty of negligence proximately causing or contributing to the accident. It assessed plaintiff's damages arising from the accident at $55,000 and those of Great Western for damages to its equipment at $489.36.

The court adopted such findings and ordered judgment for plaintiff in the sum of $55,000 against Great Western; but determined further that the latter take nothing by its cross-claim against the special administrator, and that plaintiff likewise take nothing by her action against it because of the doctrine of marital immunity.

On Great Western's subsequent motion for amended findings or for judgment notwithstanding the verdict or for a new trial, the court amended its findings and conclusions, holding that Great Western was entitled to judgment against the special administrator for an undivided one-half of such sum as it would be required to pay by reason of the judgment against it, but otherwise denied the motion. At the same time, the court denied plaintiff's motion for judgment against the special administrator in the sum of $55,000 because, the court held, the doctrine of marital immunity as between plaintiff and decedent barred such a judgment.

At the close of the trial the court instructed the jury as follows:

"* * * The Defendant Railroad Company had complied with the statutory requirements and the Railroad and Warehouse Commission's orders and regulations with respect to this crossing. It is only where a crossing is extra hazardous, unusually dangerous, that the burden may fall on the railroad company to provide additional signals or warning devices for protection at the crossing, and a failure to do so, if required in the exercise of due care under such circumstances, would be negligence. It is for the Jury here to determine whether this was an extra hazardous crossing, and if so, whether additional warning devices should have been supplied by the Railroad Company, or whether other precautions should have been taken by it, and whether a failure to do so was negligence.

"The law provides further * * * that it was the duty of the engineer on the Defendant Railroad engine to ring the bell or sound the whistle upon such locomotive at least eighty rods from the crossing, and to continue the ringing of such bell or the sounding of such whistle at intervals until such locomotive and the train shall have crossed the road, and a failure to do so is negligence on the part of the Railroad Company."

The court denied Great Western's request that the jury be instructed that:

"An engineer and crew who give the required signals of the approach of the train have the right to assume that a vehicle on or near the

track at a crossing will be out of the way in time to avoid a collision, and they are not required to slow down or stop the train until it appears that a collision is imminent."

On appeal from the order denying its motion for judgment notwithstanding the verdict or for a new trial, Great Western contends (1) that the evidence was insufficient to establish that it was negligent in failing to properly signal the approach of its train to the crossing, or in providing adequate signs, signals, or other warning devices therefor; (2) that the court erred in receiving testimony with respect to other accidents at this crossing and to the effect that at night the headlights of trains approaching it from the south, parallel to the highway, would be likely to confuse motorists driving toward it from the north on Highway No. 56; and finally (3) that the court erred in instructing the jury and in failing to give instructions requested by Great Western as above set forth.

Pursuant to Minn. St. 605.065,[1] plaintiff served notice of review of the order which denied her motion for judgment against the special administrator.

The facts are as follows: The accident occurred on March 2, 1957, shortly after 7:30 p.m., where the Great Western tracks cross over Highway No. 56 some 2½ miles south of the junction of this highway with Highway No. 30. Highway No. 56 runs generally north and south and the tracks as they cross the highway extend in a northeasterly and southwesterly direction and intersect it at an angle of approximately 60 degrees. Some 600 feet south of this crossing, Highway No. 56 curves to the southwest and thereafter runs parallel with the tracks of Great Western for a substantial distance. In this area the terrain is

---

[1]Minn. St. 605.065 (L. 1963, c. 806, § 6) provides: "A respondent may obtain review of a judgment or order entered in the same action which may adversely affect him by serving a notice of review on all parties to the action who may be affected by the judgment or order. The notice of review shall specify the judgment or order to be reviewed and shall be served upon the other parties within 15 days after service of the notice of appeal on that respondent and thereafter shall be filed with the clerk of the supreme court."

generally level and there are no obstructions to the view of automobile drivers approaching the crossing from the north. From a distance of approximately 1,200 feet north of it, drivers proceeding south on Highway No. 56 have a clear view of the tracks to the southwest for approximately 4,400 feet.

At the time of the accident the highway was clear and dry and the atmosphere sufficiently dark to require lights. The automobile in which plaintiff was a passenger was then traveling south on Highway No. 56, at a speed of from 40 to 50 miles per hour. Its left front window was partially down, but the other windows were closed. Just before reaching the crossing, plaintiff suddenly noticed the headlight of the train coming from the south immediately in front of her. She shouted a warning to her husband, who quickly turned the car to the right so that its wheels were straddling the north rail of the tracks. A second or two later the collision occurred in which plaintiff was injured and her husband killed.

The engineer and the fireman both testified that the locomotive whistle was sounding continuously for some time prior and up to the accident and the fireman said that its bell was also ringing at that time. Another witness testified that he had heard the whistle sound just prior to the collision. Plaintiff testified that as the train approached the crossing she did not hear its whistle or bell. In connection therewith, the following testimony by her is pertinent:

"Q. As you approached the crossing, did you have the heater in the car on?

"A. Yes.

"Q. Does the heater make much noise?

"A. No, it doesn't.

"Q. Did you have the radio on?

"A. No, * * *.

          *    *    *    *    *

"Q. Was the windshield clear?

"A. Yes.

"Q. Now, were any of the windows down in the car?

"A. We always had it rolled down a bit on his side, the left hand side.

\* \* \* \* \*

"Q. As you \* \* \* were now immediately approaching the crossing here, say, within five hundred feet, at any time from that far back up until you were at the crossing did you hear any whistle or horn or bell?

"A. No, I did not.

"Q. How is your hearing, Mrs. Haukom?

"A. Really good."

On cross-examination she testified as follows:

"Q. I take it you don't have any recollection of the fact that the window was open that night?

"A. I couldn't say, but I am quite sure it was.

"Q. Was it open just a little ways?

"A. Just a little bit, like so.

\* \* \* \* \*

"Q. Now, you say that you suppose that the three of you were talking in the car as you were riding along out of Hayfield that night?

"A. Well, my husband very seldom talked when he was driving the car.

"Q. \* \* \* were you and your sister?

"A. Oh, most likely we did, yes.

"Q. Were you paying attention to the traffic on the highway?

"A. No, I didn't.

\* \* \* \* \*

"Q. \* \* \* you don't have any recollection of any cars coming toward you \* \* \* that night prior to the accident?

"A. It's just all a dream, I couldn't tell you.

\* \* \* \* \*

"Q. \* \* \* prior to the time that you saw these lights you weren't paying much attention, and you didn't have any knowledge that there was a train in the vicinity?

"A. Not until I seen that light.

"Q. And prior to that you weren't paying much attention?

"A. We weren't. But, I couldn't talk for him."

The evidence disclosed that Great Western had complied with the required regulations of the Minnesota Railroad and Warehouse Commission as to warning signs and signals—that it maintained a crossbuck sign on the west side of the highway within 75 feet of the crossing and that at a point some distance north of this there was a warning sign. It also disclosed that plaintiff's husband was familiar with this crossing; that for many years he had worked for a state highway maintenance crew and in this work was frequently required to pass over it.

■ We are of the opinion that the evidence as above described was insufficient to create a fact question as to whether the whistle or bell of the locomotive had been sounded as the train approached the crossing just prior to the accident. The engineer and fireman of the locomotive, as well as a third witness who resided in the vicinity of the crossing, all testified that the whistle of the locomotive had been so sounded. In addition, the fireman testified that the locomotive bell was also being sounded as the train approached the crossing. Compliance with Minn. St. 616.34[2] would be established by the sounding of either of such signals. Engberg v. G. N. Ry. Co. 207 Minn. 194, 290 N. W. 579, 154 A. L. R. 206.

In opposition to this testimony, plaintiff testified that she had not heard any locomotive whistle or bell at the time. She did not testify that she had been listening for such signals or that she would have heard them had they been given. She admitted that the right car windows had been closed and that just before the collision she had been engaged in conversation with her sister who was seated next to her in

---

[2]Minn. St. 616.34 provides: "Every engineer driving a locomotive on any railway, who shall fail to ring the bell or sound the whistle upon such locomotive, or cause the same to be rung or sounded, at least 80 rods from any place where such railway crosses a traveled road or street, on the same level, except in cities, or to continue the ringing of such bell or sounding of such whistle at intervals until such locomotive and the train thereto attached shall have completely crossed such road or street, shall be guilty of a misdemeanor."

the front seat of the car. She testified that up until a second or so before the collision she had not paid much attention to her surroundings and that she had no knowledge that there was a train in the vicinity.

On a number of occasions we have held that negative evidence of this kind was insufficient to overcome the positive and direct testimony of members of a train crew and others that whistle or bell signals of a locomotive had been sounded as the train approached a crossing. Schroht v. Voll, 245 Minn. 114, 71 N. W. (2d) 843; Jorgenson v. Minneapolis, St. P. & S. S. M. Ry. Co. 231 Minn. 121, 42 N. W. (2d) 540; Krause v. Chicago, St. P. M. & O. Ry. Co. 207 Minn. 175, 290 N. W. 294; Lawson v. Minneapolis, St. P. & S. S. M. Ry. Co. 174 Minn. 404, 219 N. W. 554. As this court stated in the Jorgenson case (231 Minn. 126, 42 N. W. [2d] 543):

"* * * All members of the train crew claim that the whistle was sounded. Six disinterested witnesses in places where they had ample opportunity to hear testified that the horn was sounded for a considerable time before the collision occurred. The only opposing evidence is that of plaintiffs that they did not hear any whistle or bell. It is doubtful that such negative testimony alone can be permitted to prevail * * *."

Based upon these decisions it is clear that the trial court erred in submitting this issue to the jury.

It is not disputed that Great Western complied with the statutes and the regulations of the Railroad and Warehouse Commission in maintaining warning signs at the crossing along Highway No. 56. The question is whether the crossing was extrahazardous so as to require warnings or other precautionary measures in addition to those required by the commission or by statute. It is well settled that if a crossing is extrahazardous a jury may find that due care requires that a railroad company furnish additional warnings or take precautions beyond those prescribed by law or by regulations of the commission. 16 Dunnell, Dig. (3 ed.) § 8174(11); Leisy v. N. P. Ry. Co. 230 Minn. 61, 40 N. W. (2d) 626; N. P. Ry. Co. v. Haugan (8 Cir.) 184 F. (2d) 472.

As to when such a situation is presented, each case is governed by its facts. Thus, in the Leisy case we stated (230 Minn. 65, 40 N. W. [2d] 629):

"In railroad crossing cases, there is no hard and fast rule for determining whether the statutory *minima* satisfy the requirements of due care and whether additional precautions are required. Each case should be determined with reference to its own facts * * *."

■ Under this rule we have held as a matter of law that a crossing is not extrahazardous where a highway traverses railroad tracks at right angles and the terrain is level and without obstructions to the view of travelers approaching it, Krause v. Chicago, St. P. M. & O. Ry. Co. 207 Minn. 175, 290 N. W. 294; because two trains traveling in opposite directions on parallel tracks on occasion may meet thereon, Blaske v. N. P. Ry. Co. 228 Minn. 444, 37 N. W. (2d) 758; where but a few persons pass over it each day and the highway crosses it at right angles and there is a clear view of the crossing from a distance of 400 feet back on the highway, Leisy v. N. P. Ry. Co. 230 Minn. 61, 40 N. W. (2d) 626; where it is in a sparsely settled region outside a village and at the same level as the highway, from which there is an unobstructed view, Blaske v. N. P. Ry. Co. *supra*; and where the highway gradually slopes down to it from the north and up from it on the south, or down to it from both directions, and there is nothing to affect visibility and no sharp turns or curves to obstruct the tracks, although atmospheric conditions at times may make visibility poor. Seekins v. Duluth, M. & I. R. Ry. Co. 258 Minn. 180, 103 N. W. (2d) 239; Rhine v. Duluth, M. & I. R. Ry. Co. 210 Minn. 281, 297 N. W. 852. See, also, Ohrmann v. Chicago & N. W. Ry. Co. 223 Minn. 580, 27 N. W. (2d) 806; Massmann v. G. N. Ry. Co. 204 Minn. 170, 282 N. W. 815; Roth v. Swanson (8 Cir.) 145 F. (2d) 262.

■ Under other evidence we have held that whether a crossing was extrahazardous constituted a fact question for the jury. Thus it has been so held where a highway extends parallel to tracks, then turns to cross them at right angles, and then thereafter turns to parallel them and a depot is located to the north of the crossing which may obstruct the view, Perkins v. Chicago, M. & St. P. Ry. Co. 158 Minn. 184, 197 N. W. 758; where in a village the tracks cross over a highway at a 49-degree angle, even though there is a clear view along them for 1,700

feet from a point on the highway 100 feet from them, Molden v. Minneapolis, St. P. & S. S. M. Ry. Co. 160 Minn. 471, 200 N. W. 740; where trees obscure part of an otherwise clear view of the tracks, Koop v. G. N. Ry. Co. 224 Minn. 286, 28 N. W. (2d) 687; and where various buildings in proximity to the tracks near the crossing obstruct the view thereof. N. P. Ry. Co. v. Moe (8 Cir.) 13 F. (2d) 377. See, also, Rhine v. Duluth, M. & I. R. Ry. Co. 210 Minn. 281, 297 N. W. 852; Licha v. N. P. Ry. Co. 201 Minn. 427, 276 N. W. 813.

■  Here, plaintiff contends that the jury might properly determine that at night the crossing was extrahazardous for travelers approaching it from the north on Highway No. 56, since they could easily be led to believe that approaching lights from the southwest were those of an automobile rather than those of a locomotive, particularly since the tracks parallel the highway for a substantial distance to the southwest before crossing it at a 60-degree angle. To support this contention plaintiff submitted testimony of three witnesses that shortly prior to the date of the accident while driving at night on Highway No. 56 approaching the crossing they had confused the oncoming lights, and as a result had collided with trains crossing the highway there. (See 9., *infra*, as to admissibility of this evidence.) Two other witnesses testified that as they approached this crossing at night from the north on Highway No. 56 they were confused by approaching lights and had believed that those of an approaching locomotive might be automobile lights. Mr. Lee McNally, employed for many years as a chief engineer for the Railroad and Warehouse Commission, wherein his work required his study and investigation of safety requirements for grade railroad crossings, testified that in his opinion this crossing was hazardous at night in that there was the possibility that motorists approaching it from the north could confuse approaching locomotive lights with motor vehicle lights coming toward them from the southwest where the tracks and highway were parallel to each other.

Great Western submitted evidence that the terrain was level and that there was nothing to obstruct the view of travelers approaching this crossing from the north; that the locomotive headlight was 14 inches

in diameter and its center was 10 feet 6 inches above the rails in contrast to automobile headlights which are ordinarily from 26 to 32 inches above the ground; that in addition to the headlight, 2 step lights and 2 marker lights on the front of this locomotive were all in operation as the train approached the crossing. Great Western argues that while it might be difficult for a traveler on Highway No. 56, approaching the crossing from the north, to determine whether approaching lights were those of an automobile or a locomotive from a distance of three quarters of a mile back, it would be the duty of such a motorist also to look for trains when coming closer to the crossing and that if this were done he would readily ascertain that a light some 14 inches in diameter and 10 feet 6 inches above the rails was not that of an approaching automobile.

On consideration of all the foregoing evidence and under the decisions above set forth, we are convinced that here factual issues were presented as to whether the crossing was extrahazardous at night; and if so, whether reasonable care required warning signals, signs, or other precautions beyond those prescribed by statute or regulations of the commission. While we find no Minnesota decisions presenting situations which are exactly analogous, a number of cases from foreign jurisdictions lend support to our conclusion. See, Texas C. T. Ry. Co. v. Allen (Tex. Civ. App.) 181 S. W. (2d) 727; Lindquist v. Des Moines U. Ry. Co. 239 Iowa 356, 30 N. W. (2d) 120; Wagner v. Toledo, P. & W. Railroad, 352 Ill. 85, 185 N. E. 236.

Since it cannot be determined whether the finding of negligence against Great Western was based upon the jury's conclusion that its employees had failed to sound the warning whistle or bell as the train approached the crossing; or upon the fact that the crossing was extrahazardous and hence required precautions in addition to those prescribed by statute or regulations of the commission; or upon such conclusions as to both issues, it will be necessary that a new trial be had as to Great Western on the issue of negligence only.

■ Based upon this court's decision in Poepping v. Lindemann, 268 Minn. 30, 127 N. W. (2d) 512, and Pelowski v. Frederickson, 263 Minn. 371, 116 N. W. (2d) 701, we conclude that plaintiff is entitled

to judgment against defendant Olmsted County Bank & Trust Company as special administrator of the estate of Benonie D. Haukom, deceased, in accordance with the jury's verdict finding decedent negligent and awarding damages to plaintiff. In the cases cited, which are controlling here and which were filed subsequent to the district court's order, we held that the doctrine of marital immunity did not constitute a bar to the action of a surviving spouse against the estate of her deceased husband based upon the negligence of the latter during his lifetime.

■   Defendant railroad contends that the court erred in receiving testimony of certain witnesses that at night they had been involved in collisions with trains at this crossing shortly before or after the accident here. At the close of the trial this testimony was stricken and the jury was instructed to disregard it. Great Western contends that its effect on the jury was not thereby removed.

In describing these collisions, these witnesses all testified that they had resulted from the witness' mistaken belief that the headlights of trains traveling northeasterly on the tracks toward the crossing were those of automobile headlights traveling north on Highway No. 56. The prevailing rule in a majority of jurisdictions is that evidence as to similar accidents suffered by others under similar circumstances at times not too remote from the accident involved in the litigation is admissible to show the dangerous character of the place of injury or that defendant had notice or knowledge of the dangers attendant upon the maintenance of the place of injury. See, Annotation, 70 A. L. R. (2d) 170. As a foundation for such evidence, it must appear that the circumstances surrounding the other accidents were substantially the same as those involved in the accident in litigation, and in most jurisdictions the determination of this question is left to the trial court. The decisions of this court are in conformity with the general rule. Lyon v. Dr. Scholl's Foot Comfort Shops, Inc. 251 Minn. 285, 87 N. W. (2d) 651; Clapp v. Minneapolis & St. L. Ry. Co. 36 Minn. 6, 29 N. W. 340; Phelps v. City of Mankato, 23 Minn. 276. It is true that some jurisdictions have not applied this rule with respect to evidence of subsequent accidents. McCormick v. Great Western Power Co. 214 Cal.

658, 8 P. (2d) 145, 81 A. L. R. 678; Trust v. Arden Farms Co. 50 Cal. (2d) 217, 324 P. (2d) 583, 81 A. L. R. (2d) 332; but Minnesota appears to have recognized the admissibility of such evidence. See, Taylor v. Northern States Power Co. 192 Minn. 415, 256 N. W. 674. Based upon the principles expressed in the cases cited, we must conclude that there was no error in the admission of the described testimony in the instant case and that it should not have been stricken.

■ Plaintiff submitted the opinion of Mr. Lee McNally, chief engineer for the Railroad and Warehouse Commission, with respect to the hazardous nature of this crossing over objections as to the foundation for such testimony and as to its competency. McNally expressed the opinion that the crossing was so designed that at night motorists approaching it from the north might be confused by oncoming lights of automobiles traveling northeasterly on the highway and locomotives traveling northeasterly on the tracks. The qualifications of this witness with respect to safety requirements of railroad grade crossings are above set forth and appear adequate to establish a foundation for the expression of his opinion as described. Ordinarily, it is for the trial court in its sound discretion to determine the sufficiency of the foundation for opinion evidence, McNab v. Jeppesen, 258 Minn. 15, 102 N. W. (2d) 709; In re Estate of Palmer, 238 Minn. 549, 57 N. W. (2d) 409; and here we find no abuse of such discretion.

Reversed with directions to enter judgment in favor of plaintiff against the Olmsted County Bank & Trust Company, as special administrator of the estate of Benonie D. Haukom, deceased, in the amount awarded by the jury; and for a new trial with respect to defendant Chicago Great Western Railway Company on issues relating to its negligence only.