Myrtell I. **BERGESON** and Archie G. Bergeson, Plaintiffs,

v.

Robert J. **SHINNEN**, Defendant and Third-Party Plaintiff,

v.

Everett L. **HANSON**, Colorado Escort Corporation, a Colorado corporation, and Moore Mortuary, Inc., a Colorado corporation, Third-Party Defendants.

Civ. A. No. 67–C–218.

United States District Court D. Colorado.

April 9, 1968.

---

Yegge, Hall, Treece & Evans, Eugene O. Daniels, Denver, Colo., for plaintiffs.

Wormwood, Wolvington, Renner & Dosh and Leon R. Hetherington, Charles M. Dosh, Denver, Colo., for defendant and third-party plaintiff.

Forrest C. O'Dell, Denver, Colo., for third-party defendant, Everett L. Hanson.

Blunk & Johnson, George E. Johnson, Denver, Colo., for third-party defendant, Colorado Escort Corp.

Wood, Ris & Hames, Eugene S. Hames, Denver, Colo., for third-party defendant, Moore Mortuary, Inc.

**MEMORANDUM OPINION
AND ORDER**

WILLIAM E. DOYLE, District Judge.

This is a diversity action arising out of an intersection collision which occurred in Denver, Colorado, on January 20, 1967. The plaintiff, Myrtell Bergeson,[1] was a passenger in a vehicle which was proceeding against a red light as a part of a funeral procession when it collided with a vehicle driven by the defendant, Robert Shinnen. The complaint alleges that Shinnen was negligent in failing to yield to the funeral procession as required by local law. Shinnen answered the Bergeson complaint and filed a third-party complaint seeking indemnity from Everett Hanson, the driver of the vehicle in which the plaintiff was riding,[2] and from the two parties allegedly in charge of the funeral procession, Colorado Escort Corporation and Moore Mortuary, Inc. Hanson then filed a cross-claim, also seeking indemnity against Colorado Escort and Moore Mortuary.

The matter is presently before the Court on motions for summary judgment of Colorado Escort and Moore Mortuary against Shinnen's third-party complaint and Hanson's cross-claim. A number of affidavits and depositions have been filed by the parties and the matter now stands submitted.

### I. COLORADO ESCORT'S MOTION FOR SUMMARY JUDGMENT.

Since both Shinnen and Hanson are seeking indemnity from Colorado Escort for any damages assessed against them, it is clear that they cannot succeed unless they can show that the collision in question was caused "solely, primarily and proximately" by the negligence of

---

1. The plaintiff's husband, Archie Bergeson, has joined in the suit seeking damages for loss of consortium.

2. The Colorado Guest Statute provides in part that a guest passenger shall have no cause of action against his host driver unless the driver is guilty of "negligence consisting of a willful and wanton disre-

gard of the rights of others." C.R.S. 1963, 13-9-1. We have previously held that Shinnen has no claim against Hanson unless he can show willful and wanton negligence, since a contrary holding would circumvent the purposes of the Guest Statute. Cf., Ward v. Denver & R. G. W. Ry. Co., 119 F.Supp. 112 (D.C.Colo. 1954).

Colorado Escort. *Otis Elevator Co. v. Maryland Casualty Co.*, 95 Colo. 99, 33 P.2d 974 (1934).

In its motion for summary judgment, Colorado Escort contends that the documents on file show conclusively that it was not guilty of negligence, and that even if negligence on its part could be shown, the facts cannot support a finding that its negligence was the "sole, primary and proximate" cause of the accident. Of course, with regard to this motion, the claimants are entitled to the benefit of every reasonable doubt, and Colorado Escort must demonstrate beyond a reasonable doubt that there is no genuine issue of fact out of which an indemnity judgment could be entered. 6 Moore's Federal Practice ¶ 56 (1966).

The Hanson vehicle was part of a funeral procession which had been proceeding south on Washington Street at the time of the accident. The procession was composed of sixteen or seventeen vehicles and was traveling from the Moore Mortuary premises to Fort Logan Cemetery. A Moore Mortuary funeral coach was leading the procession and the procession was accompanied by two motorcycle escorts from the Colorado Escort Corporation. During the procession, the escort officers rode up and down the length of the procession, and stopped traffic at controlled intersections. The escorts were identified by flashing red lights; the vehicles in the procession apparently had their headlights burning; and each vehicle was identified by a funeral flag attached to its left front fender.

The procession traveled in this manner until it reached the intersection of the Valley Highway Service Road and South Washington Street. Hanson testified that at that time he was traveling approximately a car length and a half behind the vehicle in front of him. There is a dispute of fact as to whether he was lagging. The leading part of the funeral procession passed through the intersection while the traffic control signal was green, but the light turned red shortly before the Hanson vehicle reached the intersection. Hanson failed to notice this change in the traffic signal, since he assumed that the procession had the right of way regardless of traffic control signals. As the Hanson vehicle passed through the intersection, it was struck on the right side by a vehicle driven by Shinnen. No escort officer was controlling traffic at the intersection when the accident occurred.

In his deposition, Shinnen testified that just prior to the accident he was traveling in an easterly direction in the middle lane of the three-lane service road. As Shinnen approached the intersection, the traffic light facing the service road changed from red to green. Shinnen stated that his attention was focused primarily on the traffic signal, but he did notice that a vehicle (apparently the one in front of the Hanson vehicle) was passing through the intersection on Washington Street just before the light facing the service road turned green. Shinnen did not notice whether this vehicle had its lights on or whether it carried a funeral flag, and it is unclear in the record whether he had an opportunity to do so. It appears, however, that his view of the approaching Hanson vehicle was obstructed by the traffic on his left. Shinnen proceeded into the intersection with the green light and did not see the Hanson vehicle until it was too late to avoid a collision. He testified that at no time did he see a motorcycle escort at the intersection or anything else that would have warned him that a funeral procession was passing by.[3]

---

3. Shinnen also testified that he did not know that funeral processions had the right of way at controlled intersections. However, this does not prevent either of the claimants from showing that Colorado Escort's negligence was the proximate cause of the accident, since for purposes of this motion we must assume that Shinnen would have stopped if an escort officer had been controlling traffic at the intersection.

Colorado Escort contends that these facts show that it performed all duties required of it under the circumstances. It points out that the ordinances of the City and County of Denver provide that all lawfully escorted processions shall have the right of way "regardless of directions indicated on official traffic control devices." Denver Rev.Mun.Code § 517.5. And Colorado Escort argues that the procession was "lawfully escorted" within the meaning of the ordinance because it was accompanied by two escort officers instead of the one escort required by local ordinance, and because the escorts were equipped with red lights and all vehicles in the procession had their headlights burning. See Denver Rev.Mun.Code §§ 517.5–517.7.

■ The relevant ordinance states that the number of motorcycle escorts shall be:

"Not less than one motorcycle where the total number of vehicles in the procession, including mortuary vehicles, is nineteen in number, or less." Denver Rev.Mun.Code § 517.5–3(1).

This ordinance does not fully answer the question before us. Compliance with this does not necessarily preclude a finding that the circumstances required the escort service to take precautions which would have avoided the accident. See, e. g., Caviote v. Shea, 116 Conn. 569, 165 A. 788 (1933); Leisy v. Northern Pac. R. Co., 230 Minn. 61, 40 N.W.2d 626 (1950); and see generally, Prosser on Torts 205 (3rd ed. 1964). The question is not entirely whether there were present the requisite number of officers, but rather whether those present were discharging their function in view of the circumstances with which they were confronted. The possibility that they were not presents a genuine issue of fact which cannot be resolved by summary judgment. The record shows that at least one local ordinance was not complied with. Section 517.6, Denver Rev.Mun.Code, provides:

"At no time will a procession proceed through a red light or operate contrary to any traffic control device, unless by the direction of an escort officer."

No escort was stationed at the intersection of South Washington Street and the Valley Highway Service Road at the time of the accident. This failure of the escort service to keep an officer at the intersection provides a triable issue of fact on the question of its negligence.

Of course, a triable issue of fact on ordinary negligence is not sufficient to defeat this motion for summary judgment. Hanson and Shinnen must show that there is a genuine question of fact as to whether Colorado Escort's negligence was the "sole, primary and proximate" cause of the accident. In this connection, Colorado Escort argues that Hanson's failure to stop for the red light in the absence of an escort and Shinnen's failure to yield to the funeral procession conclusively demonstrates that they were concurrently negligent and that any negligence of Colorado Escort was not the primary cause of the collision. The escort service also argues that at most it was guilty of "passive" negligence, not "active" negligence, as required by Colorado indemnity law. Colorado & S. Ry. Co. v. Western Light & Power Co., 73 Colo. 107, 214 P. 30 (1923).

■ However, even if it could be established from the facts on record that both Hanson and Shinnen were negligent in the operation of their vehicles, this would not necessarily preclude them from maintaining an "action over" against Colorado Escort. Chief Judge Arraj of this Court has stated this principle as follows:

"One exception to the general rule prohibiting indemnity among tortfeasors and recognized by the Colorado courts is that which allows a party secondarily or incidentally liable to recover from the party primarily liable." Atchison, Topeka & Santa Fe Ry. Co. v. Hadley Auto Transport, 192 F.Supp. 849 (D.C.Colo.1961).

■ Furthermore, in Parrish v. De Remer, 117 Colo. 256, 187 P.2d 597

(1947), the Colorado Supreme Court held that even a party guilty of active negligence can demand indemnification from a party guilty of passive negligence if he can show that the latter's negligence was the "sole, primary and proximate" cause of the injury. The court held that its reference to active and passive negligence in Colorado & S. Ry. Co. v. Western Light & Power Co., supra, was limited to a discussion of the doctrine of last clear chance and was not intended to qualify the doctrine of indemnification.

In *Parrish* the plaintiff had been involved in an auto collision which occurred on a road under construction by the defendant. After the plaintiff had been sued by the other party to the collision and held liable for damages, he initiated an indemnity action against the contractor alleging that the road was narrow and in poor condition; that a ramp along the road had obstructed his view of approaching vehicles; and that the defendant had failed to post watchmen to warn drivers of on-coming traffic. The trial court granted a summary judgment in favor of the defendant, but the Colorado Supreme Court reversed, recognizing that indemnification may be proper against a party who creates a "nuisance" or "dangerous condition" which is the "sole, proximate and primary cause of the injury." 187 P.2d at page 605. See also, Great American Ins. Co. v. "Quick-Way" Truck Shovel Co., 204 F.Supp. 847 (D. Colo.1962).

■ Either or both of the claimants in this case may be able to show that the accident would not have occurred if a motorcycle escort had been present at the intersection, and that Colorado Escort's failure to provide an officer at the inter-section created a dangerous condition which was the primary cause of the accident. Of course, Hanson's burden will be greater than Shinnen's, because he cannot be held liable unless his negligence consisted of a "willful and wanton disregard of the rights of others." See footnote 2, supra. If Hanson is found guilty of wanton negligence, he will have difficulty in proving that his negligence was "secondary," "remote," and "less culpable" than Colorado Escort's. However, since Hanson is entitled to the benefit of all reasonable doubts in determining whether a genuine issue of fact exists, the possibility that he could prove Colorado Escort primarily responsible cannot be ruled out at this stage of the case.

Colorado Escort Corporation's motion for summary judgment will therefore be denied.

## II. MOORE MORTUARY'S MOTION FOR SUMMARY JUDGMENT.

■ Moore Mortuary contends that there are no facts which could justify a finding that it was negligent or primarily negligent, and that it is therefore entitled to a summary judgment. However, both claimants have alleged that Colorado Escort was an agent of Moore Mortuary at the time of the accident,[4] and Moore Mortuary has come forth with no evidence which would preclude such a finding. Thus, Moore Mortuary's motion for summary judgment must also fail.

It is therefore ordered that the motions for summary judgment filed by Colorado Escort Corporation and Moore Mortuary, Inc. are denied in their entirety.

4. The Hanson cross-claim specifically alleges that Colorado Escort was the agent of Moore Mortuary. Shinnen's third-party complaint alleges only that the accident was caused primarily by the negligence of "the third-party defendant, Denver Escort, Inc., [sic] through its agents and employees, acting in the course and scope of their employment, and the third-party defendant, Moore Mortuary, Inc., through its agents and employees, acting in the course and scope of their employment * * *." We hold that this is sufficient to allege an agency relationship between Colorado Escort and Moore Mortuary. While the allegation lacks clarity, there is no danger of surprise or prejudice to Moore Mortuary.