# ANNA KOSCIELSKI v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

February 6, 1931.

No. 28,080.

*Tautges, Wilder & McDonald* and *F. M. Miner,* for appellant.
*John E. Palmer* and *James L. Hetland,* for respondent.

[1]Reported in 234 N. W. 693.

462

HILTON, J.

Plaintiff appeals from an order denying her motion for a new trial.

An automobile (Chevrolet sedan) with five passengers therein was struck by one of defendant's freight cars at a railway crossing in Owen, Wisconsin, at approximately 11:38 p. m. on July 14, 1928. Three actions were instituted to recover damages for injuries resulting from the accident; the cases were tried together. Two of the actions were brought by two ladies who with a man were riding in the back seat of the sedan; the other was brought by the appellant here, who was riding in the right-hand side of the front seat with the driver. One of the back-seat plaintiffs secured a verdict for $750 and the other a verdict for $1,000; no appeals were taken. In appellant's case a verdict was returned for the defendant.

In addition to the forms of general verdicts submitted to the jury, there were submitted in each case the following four interrogatories, resulting in the answers as indicated:

"Int. 1. Was the defendant guilty of actionable negligence in failing to perform its statutory duty, as defined by the court, in the matter of ringing the engine bell?

"Ans. No [in all three cases].

"Int. 2. Was the defendant guilty of actionable negligence in failing to give a proper and seasonable warning, as defined by the court, at the Fifth street crossing?

"Ans. Yes [in all three cases].

"Int. 3. If either one of the above interrogatories is answered in the affirmative, was the plaintiff guilty of contributory negligence in any degree?

"Ans. No [in case of Mrs. Pierzynski and Mrs. Polnaszek]; yes [in case of Anna Koscielski, this appellant].

"Int. 4. If the next preceding interrogatory is answered in the affirmative, was such contributory negligence more than slight want of ordinary care?

"Ans. [Unanswered in cases of Mrs. Pierzynski and Mrs. Polnaszek]; no [in case of Anna Koscielski, this appellant]."

Generally speaking appellant's grounds for asking a new trial are: (a) That the evidence was not sufficient to sustain the special finding of the jury holding appellant guilty of contributory negligence; (b) that the general verdict is not sustained by the evidence; (c) that the court erred in stating to the jury in the course of its charge that the driver of the car was guilty of contributory negligence as a matter of law and that such statement was prejudicial to appellant; (d) that the court erred in its refusal to give certain instructions relative to contributory negligence in the language asked for by appellant. The above grounds are not considered in the order in which they appear.

■ A party of eight people left the farm of appellant's father seven and one-half miles from Owen to meet defendant's 11:57 p. m. train for Chicago. Three of the party were in a one-seated Ford roadster; the remaining five (including appellant) were in the sedan. The Ford proceeded about 150 feet ahead of the sedan.

After entering the village limits the automobiles went on Oak avenue and then turned to the right (west) at its intersection with Fifth street, the intersection being about 125 feet from the main line track crossing on Fifth street. There was a passing track 20.6 feet east of the main line track. The Ford crossed both tracks and proceeded on Fifth street to Central avenue, where it turned north and later east toward the depot, which was along the main line track and 635 feet north of the crossing at which the accident occurred.

Just west of the main line track on Fifth street there was a statutory sign "Look Out For The Cars." When upon the main track at that crossing the sedan was struck by a gondola freight car moving southward, and the injuries resulting therefrom account for this law suit.

A locomotive was engaged in a switching operation north of the depot. It coupled onto 23 cars with air hose connected up and was headed north. This train was about 1,000 feet long. The cars were then backed southward on the main line track toward the Fifth street crossing, eventually to be coupled with the remainder

of a freight train standing several blocks south. During the backing up process the leading car, the one nearest the Fifth street crossing, was the gondola car referred to.

At the start of the train movement causing the accident the gondola car was near the depot where brakeman Weir, a witness for defendant, gave a back-up signal. The engineer answered the sig-. nal by giving three blasts of the whistle and turned on the automatic bell ringer; the bell continued to ring until after the accident.

As the train started to move slowly backward toward the Fifth street crossing, Weir, holding a lighted lantern in his right hand, got on the southwest corner of the gondola car, standing in the stirrup. The whistle blasts and the ringing of the bell were heard by various witnesses, among them a passenger waiting at the depot. Weir's lantern signals were also seen.

Weir testified to certain other acts done by him relative to leaving the gondola car and proceeding to the crossing where he signaled the occupants of the sedan with a lantern. Two private rules of the defendant, regulating the conduct of its employes in a train movement such as was involved here, were admitted in evidence over defendant's objection. The answer of the jury to the second interrogatory, taken in connection with the court's charge relative to "a proper and seasonable warning," is not a finding that Weir did not reach the crossing. The evidence shows that it was from that crossing that he gave a "washout" signal which caused the train to stop two or three car lengths beyond the crossing. The answer undoubtedly meant no more than that Weir was not at the crossing a sufficient length of time before the sedan approached it, for there was abundant evidence that he was on the gondola car, left it, and ran toward the crossing.

An arc light was located at the intersection of Oak avenue and Fifth street. A platform extended entirely around the depot and along the main line track in a southerly direction to about 315 feet from the crossing. Near the southerly end of this platform there was an electric light, and two other similar lights were on the platform near the depot. These three lights had reflectors and stood

on posts nine or ten feet high. On each of the southwest and southeast corners of the depot there was a bright electric light. All of these lights had 40-watt bulbs and were burning during the time here involved, as was also a red semaphore light near the depot.

Two occupants of the Ford (witnesses for plaintiff) before crossing the Fifth street tracks, upon looking to the right, saw the lights. One of them testified that he saw moving objects on the track, saying at first that he saw the cars and engine.

The evidence showed the speed of the train to be from four to six miles per hour and then slowing down to two or three miles per hour before the accident. The distance the train would travel in a given space of time determined its location at various times between the commencement of the backward movement and until the leading car struck the automobile.

There were some obstructions to the view northward of the occupants of the automobiles while passing between the intersection and the Fifth street crossing. The evidence however shows that at 100 feet east of the center of the main line crossing a train is in full view for about 200 feet north of the crossing; at 75 feet it is in full view for over 300 feet; and at 50 feet the view is unobstructed. There was evidence that the occupants of the sedan were talking to each other while approaching the crossing. By stipulation certain decisions of the state of Wisconsin were admitted in evidence.

The driver, who did not bring an action, was familiar with the Fifth street crossing; he saw the "Look Out For The Cars" sign; the lights on his car were bright and burning. Weir testified that the sedan was going 25 miles per hour; the driver said that its speed was only 10 miles per hour and that he practically brought the sedan to a stop 20 feet before reaching the passing track—40 feet from the main line track. He also said that he then looked to the right (north) and saw the lights at the depot but did not see any cars. The cars without question were near at hand and in plain sight; an occupant of the Ford had seen them when they were farther away. The driver claims to have looked only twice to the right in going the 125 feet from the intersection, the first time being

when he says he was practically stopped 40 feet away from the main line track, and the other time when he saw the freight car six feet away, just before he was hit. The windows in both of the front doors of the sedan were open. Of necessity all of the facts · cannot here be recited in detail; most of them should be and have been, in order that the case may be properly understood.

The court in its instructions to the jury said:

"You are instructed  *  *  *  and I might as well tell you that the reason why I feel that as a matter of law I must say that he [the driver of the car appellant was riding in] was negligent is that the evidence shows beyond any question whatever that if he had looked as diligently as he ought to have done under the circumstances at a railway crossing, and taken all the care that he ought to have taken, he would have seen enough to put him on his guard and enable him to avoid the accident; other people did, and if they did, he could."

From his own testimony and that of others, which is uncontradicted, and the admitted physical facts, including the ringing of the bell, the court properly held him guilty of contributory negligence as a matter of law under the rule maintaining both in Minnesota and Wisconsin. Both sides cite cases and quote copiously from decisions of these states in support of their respective propositions, as they do on other propositions involved in the case. Appellant especially invokes the decisions of both states.

The reason that the court gave the instruction relative to the driver's contributory negligence as a matter of law was that "his negligence comes into the case  *  *  *  because if he was not negligent, then no one of these three plaintiffs could be held under the circumstances of this case to be negligent." Appellant cannot successfully claim that she was prejudiced by the charge relative to the driver's contributory negligence.

The court expressly instructed the jury that the driver's "negligence is not imputed to the plaintiffs in this case or to either one of them, the one on the front seat or the two on the back seat." He

further stated: "It is perfectly obvious that it would not be just and right to require of them under ordinary circumstances the same degree of care, or anything like it, that is required of the driver of a car."

Appellant (a guest passenger) was riding in the front seat by an open window on the side from which the train approached. She admits that she knew they were going to cross a track but claims that when about 26 feet therefrom she looked in both directions and saw nothing, neither the lights on the platform nor at the depot, which other witnesses had seen. Not only did the driver of the sedan see the lights when 40 feet away from the main line track, but at 35 feet from the main line track the man in the back seat of the sedan also saw them; this is in addition to what occupants of the Ford saw. Whether she looked or not was a question for the jury, as was also the question as to whether she was paying any attention to the surroundings, not having heard the ringing of the bell or the noise made by the train. There was talking going on in the automobile which would naturally attract and hold her attention. From the evidence the jury might find that the speed of the sedan was 25 miles per hour; admittedly appellant made no protest to such a speed at any time. The jury was justified in reaching the conclusion that she neither looked nor listened.

Failure to look and listen, under circumstances such as this case discloses, is negligence. The jury could have found that she did not look, for if she had of necessity she must have seen the lights and the approaching cars and properly governed herself accordingly.

Supporting the conclusions we reach, particularly with reference to the finding of the trial court that the driver of the sedan was guilty of contributory negligence as a matter of law and that the evidence warranted the jury in finding plaintiff guilty of contributory negligence, see: Dummer v. Milwaukee Elec. Ry. & L. Co. 108 Wis. 589, 84 N. W. 853; Howe v. Corey, 172 Wis. 537, 179 N. W. 791; Bahlert v. C. M. & St. P. Ry. Co. 175 Wis. 481, 185 N. W. 515; Twist v. M. St. P. & S. S. M. Ry. Co. 178 Wis. 513, 190 N. W. 449; Sweeo v. C. & N. W. Ry. Co. 183 Wis. 234, 197 N. W. 805;

Belongy v. K. G. B. & W. Ry. Co. 184 Wis. 374, 199 N. W. 384; Roth v. C. M. & St. P. Ry. Co. 185 Wis. 580, 201 N. W. 810; Glick v. Baer, 186 Wis. 268, 201 N. W. 752; New Amsterdam Cas. Co. v. C. & N. W. Ry. Co. 190 Wis. 203, 208 N. W. 932; Swanson v. Lake Superior T. & T. Ry. Co. 200 Wis. 491, 228 N. W. 257; Jensen v. M. St. P. & S. S. M. Ry. Co. 154 Minn. 414, 191 N. W. 908; Franklin v. M. St. P. & S. S. M. Ry. Co. 179 Minn. 480, 229 N. W. 797; Sorenson v. Sanderson, 176 Minn. 299, 223 N. W. 145; 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 7012, and cases cited.

Under the facts in this case and Wisconsin St. 1927, § 192.27(3), (6), appellant was barred from recovering in this action, the jury having answered the first interrogatory in the negative. The general verdict was consistent with the answers to the interrogatories.

Considering all the evidence, the question of appellant's contributory negligence was one of fact for the jury; both counsel acquiesced in the submission of that question to the jury. Appellant indulges in the not infrequent but incorrect practice of referring to evidence most favorable to the losing side rather than that most favorable to sustaining the verdict. There was evidence sufficiently sustaining the jury's finding. The verdict must stand unless reversible error was committed at the trial. We find none.

The charge of the court was lengthy, complete, and fair. It covered every conceivable angle of the case; many of the instructions requested by appellant were given, some of which were perhaps more favorable to her than the law required. Proper instructions as to "proximate cause" were given. After the charge was finished the attorney for appellant requested several instructions that were given and one or two that were not given. Those not given were refused for the reason, as stated by the court, that "I think I have covered that." He had. The so-called "emergency rule charge" was not necessary. There were no errors in the charge.

We have carefully examined the record and briefs and considered the oral arguments of counsel and every feature of the case. We reach the conclusion that there are no grounds for reversal.

Order affirmed.