RICHARD J. THOLE v. LYLE JEROME NOORLUN.
LYLE J. NOORLUN v. RICHARD J. THOLE.
STEVEN J. PIZINGER v.
LYLE J. NOORLUN AND ANOTHER.
TERRY NOVAK v. RICHARD J. THOLE
AND ANOTHER.

177 N. W. (2d) 295.

April 24, 1970—No. 41880.

*Steneroden Law Offices* and *J. H. Hill,* for appellant.

*Shear & Rooney, Thomas J. Rooney, Murnane, Murnane, Battis, deLambert & Conlin,* and *Robert T. White,* for respondent.

Heard before Knutson, C. J., and Rogosheske, Sheran, Peterson, and Frank T. Gallagher, JJ.

SHERAN, JUSTICE.

Appeal from an order of the district court denying the motion of Lyle J. Noorlun for judgment notwithstanding the verdict or for a new trial in actions consolidated for trial on the issue of liability only.

These four actions arise from an automobile accident which occurred at the intersection of Dealton Street and West Seventh Street in St. Paul, Minnesota, at approximately 2 a. m. on August 6, 1966. West Seventh Street is a major thoroughfare running generally east and west. For eastbound traffic, the speed limit is marked at 35 miles per hour at the intersection with Dealton, decreasing from a 40-miles-per-hour limit posted west of that point. The view westerly on West Seventh from the intersection with Dealton is clear for about 600 feet, beyond which point West Seventh curves. The roadway is relatively level. The asphalt pavement was dry and in good driving condition on the night in question.

Appellant was proceeding westerly on West Seventh Street

in his 1958 Dodge automobile, intending to turn left, or to the south, onto Dealton Street. Terry Novak and Steven Pizinger were passengers in the Noorlun automobile. It is uncontradicted that appellant engaged his signal lights at least 100 feet in advance of the turn. Respondent, Richard J. Thole, was proceeding easterly on West Seventh in his 1963 Buick Riviera automobile. There is testimony that Thole was traveling at a high rate of speed, though no clear evidence of what that speed was. As appellant approached the Dealton intersection, he slowed down but did not stop and turned across the centerline of West Seventh into the line of oncoming traffic. Thole braked sharply before reaching the Dealton intersection, producing "skid" marks of approximately 111 feet. The automobiles collided almost head-on, totally demolishing both.

Thole and Noorlun commenced separate actions against each other for their personal injuries and property damages. Two separate actions were commenced for personal injuries on behalf of Noorlun's passengers, one against Thole and Noorlun, and one against Thole, who filed a third-party complaint against Noorlun. The actions were consolidated for trial. The case was submitted on special verdicts, which were answered with findings of negligence on the part of Noorlun, which was a direct cause of the accident, and of no negligence on the part of Thole.

■ Appellant contends that it was error not to direct a verdict in his favor, or not to grant him judgment notwithstanding the verdict, because the testimony and physical evidence in the case indicates that the speed of respondent Thole was so excessive as to constitute negligence as a matter of law. We disagree. Four witnesses were allowed to testify to the speed of the Thole automobile: Appellant, his passenger Novak, and two disinterested witnesses present at the scene, Harold Samec and Dennis Martin. Neither appellant nor Novak was able to estimate Thole's speed. Martin, a passenger in an automobile also traveling westerly on West Seventh slightly to the right and ahead of the appellant's automobile, was unable to estimate the speed of

the Thole automobile, but he testified that it must have been "really wheeling." Martin's testimony as to the point of impact was contrary to the observations of the police officers, so the jury would be justified in discrediting his views. The fourth witness, Samec, observed Thole's approach to the accident scene from a point 10 feet below the surface of West Seventh. His vision was obscured by a billboard, grass, and weeds, and by his getting out of the car in which he had been sitting. Samec estimated Thole's speed at 50 to 60 miles per hour. In addition to the fact that his vision was impeded, however, Samec's recollection of the collision was sketchy and inconsistent, so the jury would again be justified in placing little weight on his testimony. Thus, we find no clear and unimpeached testimony compelling the conclusion that Thole's speed was excessive.[1]

The material evidence claimed to establish that Thole's speed was excessive includes the 111-foot "skid" marks produced by the Thole automobile, the nature and extent of damage to the two automobiles, and the location of the automobiles following the collision. Following the collision, the Thole automobile flipped and came to rest on its top along the south curb of West Seventh some 20 feet east of the east curb of Dealton, while appellant's automobile came to rest some 58 feet east of Dealton. These facts do not unequivocally indicate that Thole's speed was excessive, however. There was no clear description of the Thole "skid" marks, and since the Thole automobile veered to the right during the course of its skid, there being no indication of whether front or rear wheels locked first, the marks would be susceptible to varying interpretations. However, it is clear that the Thole "skid" marks terminated 12 feet east of the east curb of Dealton, that brush-type skid marks, apparently produced by appellant's automobile, were found just east of this point, and that all debris resulting from the accident was at this point or to the east of it. This evidence strongly indicates that the point of impact was

---

[1] Backman v. Fitch, 272 Minn. 143, 137 N. W. (2d) 574; Knudson v. Nagel, 238 Minn. 186, 56 N. W. (2d) 420.

approximately 12 feet east of Dealton, rather than at the Dealton centerline as appellant contends, thereby diminishing the eastward movement of the Thole automobile following impact from 30 or more feet to less than 10 feet and that of appellant's automobile correspondingly. This evidence also supports the inference that appellant's turn was performed negligently, an inference buttressed by the police officer's testimony that appellant stated after the accident that he "guessed" he "just misjudged." In light of this evidence, we have concluded that the findings of the jury were justified.

■ Appellant also contends that it was error for the trial court to refuse to admit the opinion of Professor Adolph Lee concerning the speed of the Thole automobile. Professor Lee was not present at the site of the accident. No one else testified in adequate detail as to the condition of the street when the collision occurred. We hold that it was within the range of trial court discretion to find the evidence at the scene of the accident and the testimony as to prevailing conditions insufficient to serve as a basis for an expert opinion as to Thole's speed. Grapentin v. Harvey, 262 Minn. 222, 114 N. W. (2d) 578. See, also, Sanchez v. Waldrup, 271 Minn. 419, 136 N. W. (2d) 61.

■ As his third assignment of error, appellant claims that the following two statements from the trial court's instructions, taken from Minn. St. 169.14, subd. 2, and 169.96, respectively, were contradictory and confusing:

"* * * The speed limit within any municipality shall be a maximum limit and any speed in excess thereof shall be unlawful."

"In all civil actions, a violation of any of the provisions of this chapter, by either or any of the parties to such action or actions shall not be negligence per se but shall be prima facie evidence of negligence only."

The latter section was read after, and intended to be applied to, applicable provisions of the Minnesota Highway Traffic Act

other than § 169.14. The quoted language of § 169.14 is an exception to § 169.96. Butler v. Engel, 243 Minn. 317, 68 N. W. (2d) 226. This fact could well have been emphasized in the instructions. But, considering the instructions as a whole, we have concluded that the statement of the law as given was correct. Appellant's trial counsel made no objection upon the ground now asserted before the jury retired. This being so, we are not disposed to order a new trial because of the ambiguity which appellant now contends resulted from the trial court's failure to clarify the fact that § 169.96 does not apply to § 169.14.

■ Finally, appellant contends that it was error for the trial court to refuse to instruct the jury to disregard testimony concerning consumption of alcoholic beverages. The evidence indicated that appellant had consumed "five or six" bottles of beer during the afternoon and evening preceding the accident, and that respondent Thole had consumed a single alcoholic drink. Upon failure to prove intoxication, an instruction to disregard testimony concerning consumption of alcohol is within trial court discretion, and the refusal to give such an instruction in this case was not shown to be prejudicial. Swanson v. Thill, 277 Minn. 122, 152 N. W. (2d) 85; Lee v. Smith, 253 Minn. 401, 92 N. W. (2d) 117.

Affirmed.