James Robert YOUNG, Appellant,

v.

Lawrence WLAZIK, et al., Respondents,

Chicago, Milwaukee, St. Paul and Pacific
Railroad Co., et al., Respondents,

City of Winona, Respondent.

No. 46148.

Supreme Court of Minnesota.

Sept. 30, 1977.

Rehearing Denied Nov. 23, 1977.

Collins & Buckley, Michael J. Sauntry, Theodore J. Collins, and Thomas J. Battis, St. Paul, for appellant.

Robert L. Hoppe, Minneapolis, for Wlazik, et al.

Rider, Bennett, Egan, Johnson & Arundel, Stuart W. Rider, Jr., and Roger R. Roe, Jr., Minneapolis, for C. M. St. Paul & Pacific Ry., et al.

Richard D. Allen and George M. Robertson, Jr., Winona, for City of Winona.

Heard before ROGOSHESKE, KELLY, and SCOTT, JJ.; reheard en banc and considered and decided by the court.

KELLY, Justice.

Plaintiff appeals from a judgment of the district court awarding him damages against defendant Lawrence Wlazik, but denying recovery against defendant railroad and its employees and defendant City of Winona. We affirm in part and reverse in part with instructions to grant a new trial against defendant railroad and railroad employees, and defendants Wlazik and Navins.

Plaintiff James Robert Young was seriously and permanently injured on April 4, 1973, when the automobile in which he was riding was struck by a train at the crossing of defendant Chicago, Milwaukee, St. Paul and Pacific Railroad Company's tracks and Harriet Street in the city of Winona. Viewing the evidence in a light most favorable to the verdict, the record reveals that defendant Lawrence Wlazik, the driver of the vehicle in which plaintiff was riding at the time of the accident, and his fiance Mary Patricia Navins, picked up plaintiff in Navins' car at approximately 11 p. m. on April 3, 1973, and the three proceeded to the Four Queens bar. They stayed at the bar for approximately 1½ hours. During this period Wlazik drank 2 Scotch manhattans, Navins had 2 rum and cokes, and plaintiff had 2 beers. At approximately 12:30 a. m., the group left the Four Queens and went to Papa John's, a pizza restaurant, where they consumed food and nonalcoholic beverages. Plaintiff testified that Wlazik had told him that Wlazik had consumed a couple of drinks at the Four Queens earlier in the evening, at approximately 7 or 8 p. m. According to all of the

testimony, however, no one in the Navins' car was under the influence of an alcoholic beverage nor was there evidence of their sensory or motor impairment because of alcohol at the time of the accident.

Shortly before 1:45 a. m. the group departed Papa John's in the Navins' car, turned onto Harriet Street, and approached the railroad crossing. The crossing was one of 34 in the residential district of the city of Winona. It was protected in each direction by a standard railroad warning crossbuck captioned with a red and white octagonal stop sign. The stop signs had been prescribed by the Minnesota Railroad and Warehouse Commission (now the Public Service Commission) in an order issued in 1926. No further warning signs or signals had been ordered, installed, or recommended by the commission, defendant railroad, or defendant city since that date.

Wlazik approached the crossing from the north, driving south on Harriet Street. He testified that he was not familiar with the crossing and that on this occasion he stopped at the stop sign, waited 5 seconds while he looked twice in both directions up and down the tracks, and, having seen and heard nothing, drove onto the tracks at a speed of not more than 15 miles per hour, where his car was suddenly struck by the train. The railroad engineer and brakeman told a very different story. They testified that the Navins' automobile proceeded across the crossing at approximately 20 to 25 miles per hour without stopping. They indicated that they did not realize the vehicle was not going to stop until both it and the locomotive were 50 to 75 feet from the crossing. The engineer testified that he then sounded the horn and applied the engine brakes in full application, but too late to avoid collision with the car. In contrast to Wlazik's testimony, the engineer and brakeman testified that the engine bell was ringing and the engine's headlight, running lights, number lights, and groundlights were lit from the outskirts of Winona through Harriet Street, the point of the accident. They further testified that the engine was proceeding through Winona at

28 miles per hour, within the 30 miles-per-hour speed limit set by Winona city ordinance. The tape from two speed recorders, which would have verified the velocity of the train, mysteriously disappeared after the accident.

1. The verdict of the jury was as follows:

*"SPECIAL VERDICT*

"We, the jury, impaneled and sworn in the above-entitled matter, find the following Special Verdict:

"Question No. 1. Was Lawrence Wlazik negligent in the operation of his automobile just prior to and at the time of the accident on April 4, 1973?

Answer ____Yes____
Yes or No

"Question No. 2. If you answered the last question 'Yes' answer this question, otherwise do not answer it.

"Was such negligence on his part a direct cause of the collision of the automobile with the train?

Answer ____Yes____
Yes or No

"Question No. 3. Was the Chicago, Milwaukee, St. Paul and Pacific Railroad Company negligent just prior to or at the time of the accident on April 4, 1973?

Answer ____No____
Yes or No

Note: If you answered this question 'Yes' answer the following questions, otherwise do not answer them.

"(a) Was the headlight on the locomotive 77A shining prior to the collision?

Answer _____
Yes or No

"(b) On April 4, 1973 was the Harriet Street crossing an 'extra-hazardous' crossing?

Answer _____
Yes or No

"(c) If you answered (b) 'Yes' answer this question, otherwise do not answer it.

Did the railroad company comply with its legal duties with respect to the matter of warning signs, signals or other crossing protection?

Answer _____
Yes or No

"(d) Was the train crew negligent with respect to the speed at which the train was being operated?

Answer _____
Yes or No

The jury by special verdict found no negligence on the part of defendants railroad, railroad employees, and city, and apportioned negligence at 90 percent for driver Wlazik and 10 percent for plaintiff-passenger Young.[1] Plaintiff appeals from judg-

"(e) Was the train crew negligent with respect to lookout and the use of train signals?

Answer _____
Yes or No

"Question No. 4. If you answered Question No. 3 'Yes' answer this question, otherwise do not answer it.

"Was such negligence a direct cause of the collision of the automobile with the train?

Answer _____
Yes or No

"Question No. 5. (a) Was the City of Winona negligent just prior to and at the time of the accident on April 4, 1973?

Answer ____No____
Yes or No

"(b) Was the City of Winona guilty of permitting the maintenance of a nuisance at the Harriet Street crossing?

Answer ____No____
Yes or No

"Question No. 6. If you answered either or both Questions 5(a) and 5(b) 'Yes' answer this question, otherwise do not answer it.

"Was such negligence or nuisance a direct cause of the collision between the automobile and the train?

Answer _____
Yes or No

"Question No. 7. Was the plaintiff James Young negligent just prior to and at the time of the accident on April 4, 1973?

Answer ____Yes____
Yes or No

"Question No. 8. If you answered the last question 'Yes' then answer this question, otherwise do not answer it.

"If so, was such negligence a direct cause of the collision between the automobile and the train and his subsequent injuries?

Answer ____Yes____
Yes or No

"Question No. 9. If you found any two or more actors named in Questions 1, 3, 5 and 7 negligent, and if you further found direct cause on the part of any such two or more such

ment entered pursuant to the special verdict and from the order of the district court denying a motion for a new trial.

This appeal is the result of a long, complicated, and hotly contested trial. As to the accident itself, there were marked differences in the testimony of the driver, passengers, and railroad employees with vigorous attempts at impeachment by both sides. While the jury chose to believe the railroad employees and it was within its province to do so, we have concluded that certain evidentiary and instructional rulings by the trial court prejudicially hampered plaintiff in his ability to fully and fairly present his case to the jury. Thus, we remand for a new trial against all defendants except the city, judgment for which we affirm. We have selected for discussion those issues which might resurface on retrial as well as those which form the basis for our decision. The issues we have selected are as follows:

(1) Did the trial court correctly instruct the jury on contributory negligence?

(2) Did the trial court err in refusing to admit certain photographic, documentary, and testimonial evidence offered by plaintiff to show notice on the part of the railroad of dangerous conditions at the Harriet Street crossing and the extrahazardous condition of that crossing?

(3) Did the trial court err in refusing to admit evidence of prior accidents at the Harriet Street crossing when such evidence was offered to show the extrahazardous condition of that crossing?

(4) Did the trial court err in admitting evidence of consumption of alcoholic beverages by plaintiff and the driver Wlazik?

(5) Did the trial court err in instructing the jury that the train bell was ringing when there was a conflict of testimony on this issue?

(6) Did the trial court err in instructing the jury that if it found a breach of duty with respect to signs or signals but also found that the driver knew of the crossing and obeyed the signal there, the resulting negligence with respect to signs and signals might not be a direct cause of the accident?

(7) Did the trial court err in refusing to admit an opinion of plaintiff's expert witness which was based on tests not shown to have duplicated with substantial similarity the circumstances of the accident?

(8) Was defendant city negligent with respect to maintenance of the crossing or the ordinance permitting a maximum train speed through the city of 30 miles per hour?

1. The trial court submitted to the jury the issue of plaintiff's contributory negligence as a passenger, and the jury found plaintiff 10–percent causally negligent. The court instructed the jury as follows:

"A passenger in an automobile is not required to exercise the care and caution required of the driver at a railroad crossing. *Nevertheless, James Young did have the duty to look out for dangers at this crossing.* He had the duty to exercise reasonable care for his own safety at that time. If he failed to do so, that would be negligence." (Italics supplied.)

Prior cases might appear to support this instruction. See, *Jorgenson v. M. St. P. & S. S. M. Ry. Co.,* 231 Minn. 121, 42 N.W.2d 540 (1950); *Koscielski v. Minneapolis, St. P. & S. S. M. Ry. Co.,* 182 Minn. 461, 234 N.W.

persons, answer this question, otherwise do not answer it.

"Assuming the total causal negligence contributing to the happening of his accident to be 100%, what percentage do you attribute to

| | |
|---|---|
| (a) Lawrence Wlazik | 90% |
| (b) Chicago, Milwaukee, St. Paul and Pacific Railroad Company | 0% |
| (c) City of Winona | 0% |
| (d) James Young | 10% |
| Total | 100% |

"Question No. 10. Answer this question no matter how you may have answered the previous questions.

"What damages were sustained by James Young as a direct result of the injuries he received in the accident of April 4, 1973?

$441,345.00

/s/ Frank Brozik

(Foreman or Forelady)

Dated this 19th day of March, 1975."

693 (1931). In *Jorgenson*, after holding that the railroad was not negligent as a matter of law on any theory advanced by plaintiffs, the court also stated that plaintiffs (husband-driver and wife-passenger) were contributorily negligent for failure to keep a proper lookout. The court noted that the wife-passenger had undertaken a duty to look for trains and had informed the driver that the track was clear and he could go.[2] In *Koscielski*, a passenger testified that she looked in both directions when the car in which she was riding was about 26 feet from the crossing, and saw no train. This court, imposing a duty upon her to look and listen for trains at the crossing, and noting that other persons in the car had seen lights from the train, upheld a jury's finding that she was contributorily negligent. In *Ohrmann v. Chicago & North Western Railway Co.*, 223 Minn. 580, 27 N.W.2d 806 (1947), however, the court emphasized that a passenger did not have the same duty as a driver:

" \* \* \* The primary duty of managing the truck with safety rested upon Mosher. There was nothing in Mosher's conduct as a driver to indicate to plaintiff that he was unaware of the railroad crossing and its attendant dangers or that he would not take proper precautions by stopping before proceeding across the track. Seated as plaintiff was between Mosher and DeBolt, there was little that he could do in a fleeting moment of time to effect a change in the driver's course of action or to take any other practical steps for the preservation of his own safety." 223 Minn. 592, 27 N.W.2d 812.[3]

We decline to continue the application of the special rule which imposes a blanket affirmative duty on an automobile passenger to look out for railroad trains and warn his driver about them. This rule is not consistent with the more limited duties imposed on passengers in nonrailroad cases, is unsound as a matter of social policy and common sense, and logically encourages backseat driving, which may be a greater threat to highway safety than any threat contemplated by the rule.

A passenger in an automobile assumes a duty not to ride with an incompetent driver, not to obstruct the driver, and to warn the driver of hazards which (1) he perceives and (2) he has reason to believe his driver does not perceive. He is under no other duties. The driver has the primary and, except in unusual circumstances, the only duty to drive the car. The law to be applied, reflecting these duties, is stated in 4 Hetland & Adamson, Minnesota Practice, Jury Instruction Guides, JIG II, 310 G–S:

"A passenger in a motor vehicle has a duty to use that care which a reasonable person riding as a (guest) (passenger) would use under like circumstances. A passenger has a duty to take active measures to protect himself from danger only when it is apparent to him that he can no longer rely upon the driver for protection, (as when the driver by his conduct shows that he is incompetent to drive or where the driver is unmindful of or does not know of a danger known to the passenger) and then only if the passenger becomes aware of the danger at a time and under circumstances when he could have prevented the harm."

This instruction is based on a series of our cases which collectively hold that a passenger has no duty to be on the alert to discover dangers which his driver may not discover and no duty to take measures to preserve his own safety except, e. g., where he has acquired knowledge of the incompetence of the driver. Even when the passenger discovers a hazard, he is not guilty of

---

**2.** Similarly, in *Franklin v. Minneapolis, St. P. & S. S. M. Ry. Co.*, 179 Minn. 480, 229 N.W. 797 (1930), this court held that a passenger who served as the driver's assistant, had been instructed to watch for trains, and had undertaken the duty to do so, was contributorily negligent as a matter of law.

**3.** See, also, *Lang v. Chicago & North Western Railway Co.*, 208 Minn. 487, 295 N.W. 57 (1940), upholding a jury finding of no contributory negligence where there was no evidence that the passenger was aware of the approach of the train.

negligence for failure to warn the driver unless: (1) He had reason to believe that the driver was not aware of the danger; and (2) there is evidence that a warning might have averted the accident. See, *Miller v. Hughes,* 259 Minn. 53, 105 N.W.2d 693 (1960); *Burdick v. Bongard,* 256 Minn. 24, 96 N.W.2d 868 (1959); *Rutz v. Iacono,* 229 Minn. 591, 40 N.W.2d 892 (1949); *Burgess v. Crafts,* 184 Minn. 384, 238 N.W. 798 (1931).

■ We hereby approve the above instruction and statements of law and declare that they are applicable to railroad accidents as well as other cases involving the duty of passengers in automobiles.[4] To the extent any of our prior decisions are inconsistent with the rules stated herein, those decisions are overruled. Because the trial court incorrectly instructed the jury on the duties assumed by plaintiff as a passenger,[5] the issue of contributory negligence must be submitted to the jury in a new trial.

■ 2. Plaintiff assigns as error the trial court's refusal to admit certain evidentiary items offered to show notice on the part of the railroad of dangerous conditions at the Harriet Street crossing as well as the extrahazardous nature of the crossing. If a crossing is extrahazardous, the railroad may be charged with negligence for failure to install signs or signals or take other precautions in addition to those otherwise required by statute or government regulation. *Haukom v. Chicago Great Western Ry. Co.,* 269 Minn. 542, 132 N.W.2d 271 (1964), and cases cited therein; *Leisy v. Northern Pacific Railway Co.,* 230 Minn. 61, 40 N.W.2d 626 (1950).

■ The trial court adopted a consistent rationale in excluding the proffered evidence: It required each piece of evidence to refer specifically to the Harriet Street crossing or otherwise have a direct bearing on the particular accident at issue in this

case. While we have generally accorded trial courts broad discretion in ruling on the admissibility of such evidence,[6] we think that the trial court's rigid application of this rationale resulted in the exclusion of potentially significant evidence bearing on plaintiff's contentions. While the rationale has the laudable goal of focusing the controversy on the Harriet Street crossing where the accident occurred, such a focus obscures the duties of the railroad in this case. Plaintiff offered to establish that the Harriet Street crossing was one of 34 crossings in close proximity in the residential district of the city of Winona, many of which were substantially similar in location, surroundings, visibility, and warning signs. The existence of such a situation, i. e., a substantial number of crossings, protected by a stop sign and railroad crossbucks, in close proximity in the residential area of the city, might indicate special notice on the part of the railroad that extra hazards are present throughout the city's crossings and give rise to duties to deal comprehensively with those hazards, including the one at Harriet Street. In any event, a jury could reasonably draw such an inference and should be permitted to consider the specific items of evidence offered by plaintiff in light of the trial court's rationale and our comments concerning it.

Plaintiff offered photographs of other crossings in the city together with the testimony of the county sheriff relating to the substantial similarity of the crossings for the purpose of showing notice to the railroad of the existence of the railroad crossing situation in Winona. This evidence would, in turn, serve as foundation for further evidence concerning notice on the part of the railroad of dangerous conditions and the hazardous nature of the railroad crossing. We think plaintiff's offer was improperly refused by the trial court. The exist-

---

**4.** Whatever unarticulated economic reasons may lie behind our previous decisions, railroads are no longer an infant industry and should be made to pay their fair share of accident costs under the same general common-law rules applicable to other defendants.

**5.** We note that the trial court refused plaintiff's requested jury instruction which, though inartfully phrased, embodied the rules stated herein.

**6.** See, e. g., *Renne v. Gustafson,* 292 Minn. 218, 194 N.W.2d 267 (1972); *Haukom v. Chicago Great Western Ry. Co.,* 269 Minn. 542, 132 N.W.2d 271 (1964).

ence of many similar crossings in very close proximity is relevant to the issue of notice of the conditions at all the crossings, including Harriet Street, and does not unreasonably detract from the critical issues in this case.

■ Plaintiff offered to introduce into evidence a report dated September 26, 1972, of a citizens' committee on railroad crossing safety appointed by the governor, together with testimony by its author, regarding the safety of certain railroad crossings in the city of Winona. The report had been distributed to the Minnesota Public Service Commission, defendant railroad, and the city of Winona. Much of the general discussion in the report and its corresponding chart summarizing accidents at railroad crossings in Winona since 1965 is clearly irrelevant to this action because it relates specifically to dissimilar crossings (i. e., those protected by flashing lights alone or flashing lights with an automatic crossing gate) and is remote from the issue of whether the railroad had notice of the condition at Harriet Street. However, the general recommendations in the report state that at least one-half of the railroad crossings in Winona could be closed and that no crossing should remain open absent a showing of public necessity. These recommendations refer generally to all of the crossings in Winona, including Harriet Street, and are relevant in that they show notice of a feasible safety precaution for crossings, and the desirability of re-evaluating the need for particular crossings and closing of unneeded ones. A portion of the report may have been admitted on this basis.[7] We note, however, that plaintiff's counsel did not clearly suggest such a basis in his offer of proof. Therefore, we would not predicate error on the refusal of the report alone.

■ Plaintiff offered two letters from railroad structural engineers to the Winona city manager concerning crossings. While one of these letters, dated June 15, 1970,

clearly refers only to the condition of the roadbed and planking at crossings and is not material, the other, dated September 17, 1969, refers to "improving the riding surface and grade crossing protection at some heavily traveled crossings and the closing of some crossings which would not jeopardize the smooth flow of vehicular traffic in the City." The letter also suggests the closing of 10 railroad crossings, including that located at Harriet Street. While the letter is not free from ambiguity, it is admissible as an admission on the part of the railroad of the feasibility of closing the Harriet Street crossing. We think the letter should have been admitted for this purpose.

■ Plaintiff offered to show through the testimony of a hearing examiner that Public Service Commission proceedings included a debate on the closing of certain railroad crossings and installation of signals at other railroad crossings located in Winona. The evidence becomes particularly significant when contrasted with the trial court's instruction that the railroad crossbuck and stop sign located at the Harriet Street crossing were in compliance with a 1926 order of a predecessor commission. The evidence was prima facie admissible to show notice of dangers and the feasibility of precautionary measures.

■ The state of the record on the evidentiary issues we have discussed leaves much to be desired. Plaintiff's shotgun offers of proof which mixed the relevant and the irrelevant and which were often vague as to purpose and incomplete as to content contributed substantially to the confusion. The trial court's practice of broadly refusing these mixed offers without carefully scrutinizing individual pieces of evidence and without giving specific reasons for refusal also contributed to the insubstantial record. On remand, the trial court should review the evidence in light of the principles of relevancy expressed herein and

---

7. Contrary to the assertions of defense counsel and the ruling of the trial court, such evidence is not hearsay. It is offered only to show

notice of a safety measure and not to show the truth of any fact in the report.

make more specific rulings.[8] Evidence which shows notice of dangerous or extrahazardous conditions at the Harriet Street crossing or at all unguarded and otherwise similar crossings in Winona should be admitted under proper instruction.[9]

3. The trial court refused to admit evidence of two prior accidents at the Harriet Street crossing apparently on the ground that the cars were crossing from the other direction. This evidence was relevant to show notice of dangerous and extrahazardous conditions and to suggest a need for additional signs, devices, or other precautions. Under the circumstances here, the difference in direction goes to the weight and not the admissibility of the evidence. Prior accidents at other crossings stand on a different footing, however. While evidence of the *occurrence* of accidents at similar Winona crossings shows notice, the trial court had discretion to exclude *detailed evidence* of such accidents as too remote and time consuming to be of substantial value.

4. The trial court admitted over objection evidence of the consumption of alcoholic beverages by plaintiff and the driver Wlazik. Defense counsel conceded that the evidence was not probative of contributory negligence. The trial court admitted the evidence to show possible impairment of observation and the likelihood of impaired recollection, emphasizing that the credibility of witnesses was critical in this case. It carefully instructed the jury of the limited purpose for which the evidence was admitted, and further instructed that there was no evidence that either plaintiff or defendant Wlazik was under the influence of alcohol. Under this instruction and in these circumstances, the admission of the evidence was not error. See, *Olstad v. Fahse*, 204 Minn. 118, 282 N.W. 694 (1938). Cf. *Thole v. Noorlun*, 287 Minn. 52, 177 N.W.2d 295 (1970). See, generally, Annotation, 8 A.L.R.3d 749.

5. The trial court instructed the jury that the train bell was ringing at the time of the accident. It gave this instruction despite a sharp conflict in testimony—the engineer and brakeman testifying that they rang the bell, and the driver of the car testifying that he heard no bell. We think the trial court was in error in so instructing the jury. Credibility issues are peculiarly within the province of the jury and trial courts should scrupulously avoid taking sides on such issues. The court's implicit identification with the railroad employees provides our main grounds for reversal.

The trial court's position that the positive testimony of the railroad employees must be held to outweigh the negative testimony of Wlazik has some support in prior cases. E. g., *Haukom v. Chicago Great Western Ry. Co. supra*; *Jorgenson v. M. St. P. & S. S. M. Ry. Co. supra*; *Krause*

---

**8.** We also note that we have examined other items of evidence offered by plaintiff for the purpose of showing notice to the city and railroad of dangerous conditions present at the crossings, e. g., the newspaper articles and testimony, and have concluded that the trial court was correct in rejecting them as vague.

**9.** The trial court suggested in a post-trial memorandum that the extrahazardous nature of the Harriet Street crossing was not a question sufficiently developed by the evidence to be put to the jury. We disagree with this assessment. It is established law in Minnesota that before a railroad can be charged with negligence for failure to install safety devices not required by statute or government regulations at a crossing (flashing lights, bells, and descending gate arms), the crossing must in some way be extrahazardous. In determining whether a particular crossing is extrahazardous, the court has considered the following factors: (1) Density of population and amount of travel in the area of the crossing; (2) visibility of the crossing and obstructions to visibility; (3) elevation at the point of the crossing; and (4) number and speed of trains passing over the crossing. *Haukom v. Chicago Great Western Ry. Co.* 269 Minn. 542, 132 N.W.2d 271 (1964) and cases cited; *Leisy v. Northern Pacific Railway Co.* 230 Minn. 61, 40 N.W.2d 626 (1950). In this case the slightly elevated crossing was in the middle of the residential area of a city and there was some obstruction in the form of utility poles and buildings. These factors, coupled with the peculiar situation in Winona of 34 crossings in close proximity in a residential area, present a jury question on the issue of extrahazardous conditions present at the Harriet Street crossing.

v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co., 207 Minn. 175, 290 N.W. 294 (1940); Franklin v. Minneapolis, St. P. & S. S. M. Ry. Co., 179 Minn. 480, 229 N.W. 797 (1930) (alternative ground). Significant factors distinguish the facts of these cases, however, including: (1) Failure to show that the witness was in a position to hear; (2) compelling evidence that the witness was not keeping a lookout or listening; (3) testimony of independent, disinterested witnesses who heard the bell. Where these factors are not present, the trial court should submit the issue on special verdict. See, e. g., Ohrmann v. Chicago & North Western Railway Co., 223 Minn. 580, 27 N.W.2d 806 (1947); Setosky v. Duluth, S. S. & A. Ry. Co., 173 Minn. 7, 216 N.W. 245 (1927); Willett v. Great Northern Ry. Co., 154 Minn. 10, 191 N.W. 260 (1922); Cotton v. Willmar & Sioux Falls Ry. Co., 99 Minn. 366, 109 N.W. 835 (1906). If a witness is attentive and in a position to hear, his negative testimony that no bell was rung is not evidence of a different order than contrary positive testimony. Either form of testimony is grounded on sense impressions and memory, and neither is inherently suspect. Id. Whether the plaintiff has advanced evidence sufficient to support a verdict in his favor, and thereby is entitled to have his cause submitted to the jury, is a matter no different in this circumstance than in any other.

6. The trial court instructed the jury that even if it found negligence with respect to signs and signals, such negligence might not be causal if the driver knew and obeyed the signs that were there. This was also error. The jury might reasonably have found that certain types of signs or signals would have prevented the accident. Flashing signals would have alerted the driver that a train was approaching and about to reach the crossing. Gate arms that drop down to block driving onto the track would have had the same effect. The trial court should not have implied a finding on this issue through the use of an "erroneous and suggestive" instruction.

7. The trial court excluded from evidence the opinion of plaintiff's expert witness that an automobile could not be driven over the Harriet Street crossing at a speed greater than 20 miles per hour without loss of control. This opinion was based on tests conducted by plaintiffs's expert in circumstances not shown to have been substantially similar to the conditions present at the time of the accident. Exclusion of the opinion in this situation was not an abuse of discretion. State v. DeZeler, 230 Minn. 39, 41 N.W.2d 313 (1950).

8. The jury found the City of Winona to be free of negligence with respect to the accident. The evidentiary rulings alleged to be erroneous, which we have discussed or otherwise examined, do not persuade us to overturn this verdict. Even if the city had notice that the Harriet Street crossing was hazardous, no liability can attach to the city's failure to close the street, for that decision involves a legislative judgment balancing the risks and convenience the crossing presents. Since the decision was discretionary, immunity shields the city's action. Minn.St. 466.03, subd. 6; Silver v. City of Minneapolis, 284 Minn. 266, 170 N.W.2d 206 (1969). The same doctrine precludes the city's liability for passage of a 30-mile-per-hour train speed ordinance. Plaintiff concedes that the city was without power to upgrade the warning devices at the crossing, but argues that it could have petitioned the Public Service Commission for a safer crossing. See, Minn.St. 219.39. We do not think that in the circumstances of this case, the city's failure to so petition rendered it liable to plaintiff.

For the reasons stated above, there must be a trial on all issues, except the liability of the city.

Affirmed in part, reversed in part, and remanded.